[Cite as *State v. Philbeck*, 2015-Ohio-3375.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26466; 26467 |
| | : | |
| v. | : | T.C. NO. 14CR2147; 14CR1660/1 |
| | : | |
| BRAD PHILBECK | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the ___21st___ day of ____August___, 2015.

. . . . . . . . . . .

DYLAN SMEARCHECK, Atty, Reg. No. 0085249, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

CHRISTOPHER A. DEAL, Atty. Reg. No. 0078510, 2541 Shiloh Springs Road, Dayton, Ohio 45426
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Brad Philbeck appeals his conviction and sentence for the following offenses from two separate cases that were consolidated for the purposes of the instant appeal[1], to wit: 1) one count of disrupting public services, in violation of R.C.

---

[1] Montgomery County Case Nos. 2014-CR-1660/1 and 2014-CR-2147.   We also note

2909.04(A)(1), a felony of the fourth degree; 2) one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), a felony of the second degree; 3) eighteen counts of breaking and entering, in violation of R.C. 2911.13(A), all felonies of the fifth degree; and 4) one count of receiving stolen property (RSP), in violation of R.C. 2913.51(A), a misdemeanor of the first degree. Philbeck filed a timely notice of appeal in both cases with this Court on November 12, 2014.

### Case No. 2014 CR 1660/1 / CA 26467

{¶ 2} On June 18, 2014, Philbeck was indicted for one count of engaging in a pattern of corrupt activity, nineteen counts of breaking and entering, ten counts of RSP (at least $1,000.00, but less than $7,500.00), one count of RSP (motor vehicle), and eight counts of misdemeanor RSP. At his arraignment on July 18, 2014, Philbeck stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 3} On August 6, 2014, Philbeck filed a motion to suppress any incriminating statements he made to police after he was arrested. A hearing was held on said motion on September 24, 2014. On the same day, the trial court issued a decision overruling Philbeck's motion to suppress.

{¶ 4} On September 25, 2014, Philbeck pled guilty to one count of engaging in a pattern of corrupt activity, eighteen counts of breaking and entering, and one count of misdemeanor receiving stolen property. All of the remaining counts were dismissed by the State. A restitution hearing was held on October 31, 2014. On November 5, 2014, the trial court sentenced Philbeck to an aggregate sentence of eight years in prison. Although Philbeck pled guilty to Count 33, breaking and entering, the trial court

that Philbeck's co-defendant in Case No. 2014 CR 1660/1 was Wilson, who was one of the two victims in Case No. 2014 CR 2147.

overlooked that count at the sentencing hearing and in the judgment entry of conviction. The trial court also ordered Philbeck to pay restitution to eighteen separate victims in varying amounts based on their claimed losses. Philbeck's restitution order totaled $19,835.25.

**Case No. 2014 CR 2147 / CA 26466**

**{¶ 5}** The incident which forms the basis for the appeal in this case occurred in the early morning hours of May 25, 2014, when Philbeck went to the residence of Brittany Wilson which is located at 2511 Oneida Avenue in Dayton, Ohio. Philbeck had previously lived at the house with Wilson, but he moved out a short time earlier. At the time of the incident, Wilson was living with her friend, Tashi Oliver.

**{¶ 6}** Wilson and Oliver had returned to 2511 Oneida Avenue after a night out drinking in the Oregon District in downtown Dayton to discover that Philbeck was inside the residence. Oliver and Philbeck immediately got into a verbal altercation. Oliver attempted to hit Philbeck with a lamp. Philbeck, however, sprayed Oliver in the face with pepper spray. Oliver testified that although she was unable to see clearly, she felt her way to the telephone and attempted to call 911. Philbeck snatched the telephone away from Oliver and tore the phone wires out of the wall. Oliver then left the residence, crawled across the street to a neighbor's home, and asked the neighbor to call the police. Shortly thereafter, Montgomery County Sheriff's Deputy Brian Crowe responded to Wilson's address based on a 911 hang-up that originated from Oliver's earlier attempt to call the police.

**{¶ 7}** On July 29, 2014, Philbeck was indicted for one count of disrupting public services and one count of misdemeanor assault. On August 5, 2014, the State filed a "B"

indictment additionally charging Philbeck with aggravated burglary, a felony of the first degree.

{¶ 8} Philbeck waived his right to a jury trial, and on October 31, 2014, a bench trial was held. At the close of evidence, Philbeck made a Crim.R. 29 motion for acquittal with respect to the misdemeanor assault charge, which was subsequently granted by the trial court. Thereafter, the trial court found Philbeck guilty of disrupting public services, but not guilty of aggravated burglary. The trial court sentenced Philbeck to twelve months imprisonment for disrupting public services, and ordered that the sentence be served concurrent to his sentence in Case No. 2014 CR 1660/1.

{¶ 9} It is from this judgment that Philbeck now appeals.

{¶ 10} Philbeck's first assignment of error is as follows:

{¶ 11} "THE DECISION OF THE TRIAL COURT, FINDING APPELLANT GUILTY OF DISRUPTING PUBLIC SERVICES, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 12} In his first assignment, Philbeck contends that the trial court's decision finding him guilty of disrupting public services in Case No. 2014 CR 2147 was against the manifest weight of the evidence. Although stated in terms of a challenge to the manifest weight of the evidence, in the body of his assignment he argues that the trial court's guilty verdict was not supported by sufficient evidence. Thus, we will address Philbeck's argument under both legal standards.

{¶ 13} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt.' " (Citations omitted). *State v. Crowley*, 2d Dist. Clark No. 2007 CA 99, 2008-Ohio-4636, ¶ 12.

{¶ 14} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. "A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.* at ¶ 71.

{¶ 15} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 16} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in

arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 17} Philbeck was found guilty of disrupting public services in violation of R.C. 2909.04(A)(1), which provides:

(A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:

(1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service communications; radar, loran, radio, or other electronic aids to air or marine navigation or communications; or amateur or citizens band radio communications being used for public service or emergency communications;

* * *.

{¶ 18} Oliver testified that after she was pepper sprayed in the face by Philbeck, she found the telephone and attempted to call 911. Before Oliver could complete the call, she testified that Philbeck snatched the phone away from her and tore the phone wires out of the wall, thereby rendering the phone inoperable. Oliver then left the residence, crawled across the street to a neighbor's home, and asked the neighbor to call the police. Deputy Crowe testified that he responded to Wilson's address based on a 911 hang-up from that location.

{¶ 19} Construing the evidence presented in a light most favorable to the State, as we must, we conclude that a rational trier of fact could find all of the essential elements of the crime of disrupting public services to have been proven beyond a reasonable doubt.

Philbeck's conviction for disrupting public services is therefore supported by legally sufficient evidence.

{¶ 20} Philbeck also suggests that his conviction for disrupting public services is against the manifest weight of the evidence because Wilson's testimony contradicted Oliver's testimony on the subject of who was attempting to use the telephone. Philbeck asserts that since Wilson was more sober than Oliver at the time of the incident, Wilson's testimony should have been given more weight by the trial court. Specifically, Wilson testified that Philbeck never took the phone away from Oliver, but rather it was taken from her. Oliver, on the other hand, testified that she was attempting to use the telephone.

{¶ 21} Nevertheless, the testimony of both women supports Philbeck's conviction for disrupting public services. Both Wilson and Oliver testified that Philbeck grabbed the telephone and threw it when someone was attempting to call the police with it. From the record, it is clear that the trial court gave more weight to Oliver's testimony when it found that "throwing the phone, which prevented [Oliver] from using the phone to complete the 911 call, that *** constituted [disrupting public services]." In *State v. Thomas*, 2d Dist. Montgomery No. 19435, 2003-Ohio-5746, ¶ 62, we held that a defendant who had ripped a telephone from the victim's wall and left her apartment with the telephone in his possession had violated the statute. The victim "was forced to contact the police from a pay phone," implying that she had no other telephone service in her apartment. *Id.* Lastly, we note that photographs of the crime scene were admitted which depicted that Wilson's landline telephone was broken and inoperable, and the phone line had been pulled from the wall, thus supporting Oliver's version of the events which occurred at the time of incident.

{¶ 22} Thus, having reviewed the record, we find no merit in Philbeck's manifest-weight challenge. It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here the trial court quite reasonably could have credited Oliver's testimony that Philbeck snatched the phone away from her and tore the phone wires out of the wall, thereby rendering the phone inoperable. Accordingly, the trial court did not lose its way and create a manifest miscarriage of justice in reaching a guilty verdict for disrupting public services.

{¶ 23} Philbeck's first assignment of error is overruled.

{¶ 24} Philbeck's second assignment of error is as follows:

{¶ 25} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY CONCLUDING THAT THE APPELLANT HAD THE PRESENT OR FUTURE ABILITY TO PAY RESITUTION HEREIN."

{¶ 26} In his second assignment, Philbeck argues that the trial court erred when it failed to consider his current and future ability to pay before ordering restitution in the amount of $19,835.25. Specifically, Philbeck argues that the trial court was unable to determine his present or future ability to pay because no pre-sentence investigation (PSI) report was ordered. Therefore, Philbeck asserts that the trial court did not have before it sufficient information regarding his ability to pay before ordering the restitution amount. As previously discussed, the trial court held a restitution hearing on October 31, 2014, in order to determine the amount of restitution to be paid.

{¶ 27} R.C. 2929.19(B)(5) imposes a duty upon the trial court to "consider the

offender's present and future ability to pay" before imposing any financial sanctions under R.C. 2929.18. *See State v. Martin,* 140 Ohio App.3d 326, 338, 747 N.E.2d 318 (4th Dist.2000). However, the statute establishes no particular factors for the court to take into consideration, nor is a hearing necessary before making this determination. *Id.* Moreover, although it is preferable, a court imposing financial sanctions need not expressly state on the record that it considered an offender's ability to pay. *State v. Parker*, 2d Dist. Champaign No. 03CA0017, 2004-Ohio-1313, ¶42. Where the trial court fails to make an explicit finding on a defendant's relative ability to pay, this court has observed that a trial court's consideration of this issue may be "inferred from the record under appropriate circumstances." *Id.*

{¶ 28} In *State v. Ayers*, 2d Dist. Greene No. 2004CA0034, 2005-Ohio-44, this court held a trial court's order of restitution was contrary to law because there was nothing in the record indicating the trial court considered the defendant's ability to pay the ordered amount.

> Information contained in a presentence investigation report relating to defendant's age, health, education and employment history, coupled with a statement by the trial court that it considered the presentence report, has been found sufficient to demonstrate that the trial court considered defendant's ability to pay a financial sanction. (Citations omitted) Here, although the trial court stated that it had reviewed the presentence report, that document has not been included in the files and records presented to this court. Neither does the State rely on its contents to refute Defendant's contention. Without knowledge of the contents of that presentence report,

we cannot infer from it that the trial court considered Defendant's present and future ability to pay a financial sanction.

*Ayers*, at ¶25.

{¶ 29} At Philbeck's sentencing hearing, the trial court stated the following with respect to the restitution order:

The Court: All right. Now going to the issue of restitution, again, restitution being only an issue in [Case No.] 2014-CR-1660/1. I note that, as I've already stated, that the general concepts of restitution apply, obviously, to your case as well as Ms. Wilson's case. And I have taken those matters into consideration when arriving at the decision that a restitution order is appropriate. Also, obviously, I must consider your – both your present and future ability to pay before imposing a restitution order. I do want to confirm one thing. You just turned thirty-three; is that correct?

Philbeck: Yes.

***

The Court: Now I did not obtain a [PSI] regarding Mr. Philbeck, because I knew what the sentence was going to be. But based upon – going first to Mr. Philbeck's present ability to pay, I note that in *State versus Croom*, *** 2014-Ohio-2315, the Second Appellate District in that case reaffirmed the conclusions stated in an earlier decision regarding Mr. Croom, regarding restitution. And that previous *Croom* decision can be found electronically at 2013-Ohio-3377. And that conclusion is that a

Defendant's ability to work while in prison is a factor that a trial court may consider in determining the Defendant's present ability to pay restitution. And Mr. Philbeck, as noted, is thirty-three. He certainly had the physical ability to commit the offenses to which he has entered guilty pleas. And based upon his age, his obvious mental capacity, and his ability to work, I note that he will have the opportunity to work while incarcerated. And that does constitute, under the case, as indicated, evidence of a present ability to pay restitution.

Going into the issue of the future ability to pay restitution, Mr. Philbeck, upon his release from prison, will be forty years old, almost forty-one years old. That's still a relatively young age. At this age, he will have the ability to work and, therefore, the ability to pay restitution, especially since the restitution, though not insignificant, is slightly under $20,000.00. Therefore, I'm going to order restitution as follows. *** And again, this restitution – these restitution amounts were based upon the testimony presented at the October 31st [2014,] hearing, the testimony presented this morning, and all of the exhibits which were admitted at both the October 31st hearing and today's hearing. ***

{¶ 30} In light of the foregoing, it is clear that the trial court expressly considered Philbeck's present and future ability to pay before ordering restitution. Although no PSI was ordered, the trial court had ample opportunity to observe and interact with Philbeck throughout the course of a bench trial in one case and plea hearing in a second case. Based on its observations, the trial court explicitly found that Philbeck, at age thirty-three,

had the present physical and mental ability to work while in prison, and therefore contribute to paying towards his restitution order. Furthermore, the trial court noted that Philbeck would only be forty years old when he was released from prison. Accordingly, the trial court found that Philbeck would have the future ability to work, and therefore pay, towards his restitution order. Under these circumstances, we conclude that the trial court did not fail to consider Philbeck's present or future ability to pay restitution.

{¶ 31} Philbeck's second assignment of error is overruled.

{¶ 32} Philbeck's third and final assignment of error is as follows:

{¶ 33} "THE TRIAL COURT ERRED WHEN IT NEGLECTED TO SENTENCE THE APPELLANT ON COUNT 33: BREAKING AND ENTERING."

{¶ 34} In his final assignment, Philbeck asserts, and the State concedes, that the trial court neglected to sentence him for Count 33, breaking and entering, in violation of R.C. 2911.13(A), a felony of the fifth degree, to which he pled guilty on September 25, 2014, in Case No. 2014 CR 1660/1. Upon review of the transcript of the sentencing hearing and the judgment entry of conviction in Case No. 2014 CR 1660/1, we find that the trial court did, in fact, overlook Count 33 when imposing Philbeck's prison sentence. Because of this oversight on the part of the trial court, the case must be remanded for sentencing on Count 33.

{¶ 35} Philbeck's third and final assignment of error is sustained.

{¶ 36} Philbeck's third assignment of error having been sustained, this matter is remanded to the trial court for proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Dylan Smearcheck
Christopher A. Deal
Hon. Michael L. Tucker