[Cite as *State v. T.O.*, 2025-Ohio-15.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-18 |
| | : | |
| v. | : | Trial Court Case No. 24CR108 |
| | : | |
| T.O. | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 3, 2025

. . . . . . . . . . .

TIMOTHY B. HACKETT, Attorney for Appellant

BAILEY J. ARNETT, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant T.O. appeals from a judgment of the Miami County Common Pleas Court convicting him of several offenses following his guilty pleas. Specifically, he challenges the trial court's imposition of restitution in the amount of $5,326.71. For the following reasons, the judgment of the trial court will be affirmed.

**I.    Facts and Procedural History**

**{¶ 2}** In December 2023, a complaint was filed against 16-year-old T.O. in the Miami County Juvenile Court charging him with one count of failure to comply with an order or signal of a police officer, one count of grand theft of a motor vehicle, and two counts of theft. The charges arose from T.O.'s stealing a car on December 24, 2023, and fleeing police in a pursuit that reached over 100 m.p.h. The vehicle was filled with Christmas gifts and several items, including credit cards. T.O. then used the credit cards in the ensuing days.

**{¶ 3}** After the complaint was filed, the State moved to transfer T.O. to adult court for criminal prosecution pursuant to Juv.R. 30 and R.C. 2152.12. The juvenile court found probable cause to bind T.O. over to the Miami County Common Pleas Court, General Division, and subsequently determined that he was not amenable to rehabilitation in the juvenile system.

**{¶ 4}** On April 17, 2024, a Miami County grand jury issued an indictment charging T.O. with one count of failure to comply with an order or signal of a police officer, a felony of the fourth degree; one count of grand theft of a motor vehicle, a felony of the fourth degree; and two counts of theft, both felonies of the fifth degree.

**{¶ 5}** On May 9, 2024, T.O. entered negotiated guilty pleas to one count each of failure to comply with an order or signal of a police officer, grand theft, and theft. The State agreed to dismiss the second count of theft. As part of the plea agreement, T.O. agreed to pay restitution on all counts, including the dismissed count. The trial court found T.O. guilty of all three counts, ordered a presentence investigation report ("PSI"), and scheduled the matter for sentencing.

{¶ 6} T.O filed a sentencing memorandum prior to sentencing alleging he was indigent, among other things. T.O. also submitted an affidavit of indigency indicating that he was not employed and had no assets. He did not list any monthly expenses.

{¶ 7} On June 3, 2024, a sentencing hearing was held. At that time, defense counsel stipulated to the amount of restitution being $5,326.71 but argued that T.O. did not have the present or future ability to pay the restitution. The trial court found that, based on the PSI and the amenability findings, T.O. had "the present and future ability to pay restitution." June 3, 2024 Sentencing Tr. 12. Thus, the trial court overruled defense counsel's request to waive restitution and other financial sanctions. Following statements of counsel, allocution of T.O., and statements of the victim, the trial court imposed community control sanctions for a term not to exceed five years. Additionally, the trial court ordered T.O. to pay $5,326.71 in restitution. After sentencing, the court ordered that the case be transferred back to the juvenile court.

{¶ 8} Before any entry was filed staying the sentence and transferring the case to the juvenile court, the parties reappeared in court on June 6, 2024. At that time, the trial court determined that the case did not need to be transferred back to the juvenile court. Therefore, the trial court proceeded with a resentencing hearing at which it again imposed community control sanctions not to exceed five years. The trial court again overruled T.O.'s request to waive the financial sanctions and imposed restitution in the amount of $5,326.71, with T.O. to pay $100 a week toward the restitution amount. The trial court did not impose a fine but ordered T.O. to pay the costs of prosecution. The trial court made a finding again on the record that T.O. had "the present and future ability to pay

restitution" in the amount of $5,326.71.   Resentencing Tr. 17.

{¶ 9} T.O. filed a timely notice of appeal.

## II.    Restitution

{¶ 10} T.O. raises the following single assignment of error:

> The trial court abused its discretion when it concluded, unreasonably and without sufficient evidence in the record, that an indigent 16-year-old defendant had the present and future ability to pay over $5,000.00 in restitution.   R.C. 2929.18, 2929.19(B)(5).

{¶ 11} T.O. acknowledges that the trial court stated on the record that it had considered his present and future ability to pay restitution, but he argues that there was insufficient evidence in the record to support that he had the present and future ability to pay restitution.   We do not agree.

{¶ 12} A trial court "imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions" authorized under R.C. 2929.18 "and shall sentence the offender to make restitution pursuant to [R.C. 2929.18 and 2929.281]."   R.C. 2929.18(A).   "In determining the amount of restitution at the time of sentencing under this section, the court shall order full restitution for any expenses related to a victim's economic loss due to the criminal offense."   R.C. 2929.281.

{¶ 13} When sentencing a defendant for a felony offense, before a trial court imposes a financial sanction, which includes restitution, the trial court "shall consider the offender's present and future ability to pay the amount of the sanction or fine."   R.C.

2929.19(B)(5). There are no factors identified in the statute that a trial court must consider when determining the offender's present and future ability to pay. *State v. Philbeck*, 2015-Ohio-3375, ¶ 27 (2d Dist.). The only requirement is that the court "consider" the offender's present and future ability to pay. Although preferable, the trial court is not required to state on the record that it considered an offender's present and future ability to pay so long as there is evidence in the record from which a reviewing court can infer that the trial court considered the offender's present and future ability to pay prior to imposing restitution. *State v. Hull*, 2017-Ohio-7934, ¶ 9-10 (2d Dist.).

{¶ 14} "Generally, a trial court's imposition of restitution is reviewed on appeal for an abuse of discretion." *State v. Brown*, 2024-Ohio-2004, ¶ 12 (2d Dist.), citing *State v. Wilson*, 2015-Ohio-3167, ¶ 11 (2d Dist.). An "abuse of discretion" has been defined as "an unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 2008-Ohio-4493, ¶ 23, citing *State v. Cunningham*, 2007-Ohio-1245, ¶ 25. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 2012-Ohio-2407, ¶ 14.

{¶ 15} At the time of sentencing, T.O. was 16 years old and had completed the eleventh grade. He informed the trial court that he intended to go into a trade, either plumbing or electrical work. Resentencing Tr. 13. According to his sentencing memorandum and PSI, T.O. had previously worked in the summer doing lawncare services in his neighborhood and made $250 a week. When discussing bond at an earlier hearing, T.O.'s counsel advised that if T.O. were released, "[h]e would seek

employment if the opportunity presented itself and he has hired counsel to deal with it." April 27, 2024 Hrg. Tr. 5. The record further reflects that T.O. was in good physical health, and there was no evidence of any mental health condition that would have prevented T.O. from working. T.O. indicated that he would be living with his mother, and his affidavit of indigency did not reflect that he had any financial obligations. T.O. was not sentenced to any term of incarceration and was placed on community control sanctions not to exceed five years. T.O. had no other misdemeanor or felony adult convictions. We also note that, as part of the plea agreement, T.O. agreed to pay restitution on all counts, including the count that was dismissed. The trial court explicitly considered T.O.'s present and future ability to pay pursuant to its obligations under R.C. 2929.19(B)(5). The record demonstrates that the trial court fully considered whether T.O. had the present and future ability to pay, and we see no abuse of discretion in the trial court's imposition of restitution.

{¶ 16} T.O. relies on this court's prior decisions in *State v. Frock*, 2007-Ohio-1026 (2d Dist.) and *State v. Baker*, 2016-Ohio-315 (2d Dist.) to support his argument. Both cases are clearly distinguishable.

{¶ 17} In *Frock*, the defendant was sentenced to 19.5 years in prison for committing aggravated burglary, burglary, and safecracking. *Frock* at ¶ 6. At the time of sentencing, the trial court made no direct inquiry into Frock's present and future ability to pay restitution but advised it had considered Frock's PSI. *Id.* at ¶ 8. The trial court ordered restitution in the amount of $17,029. The PSI revealed the following:

Frock was 21 years old, that he had completed the eleventh grade while in

prison, that he was diagnosed as bipolar and paranoid schizophrenic, that he was a substance abuser, and that he had an extensive history of criminal behavior resulting in several juvenile and adult confinements. His employment history consisted of sporadic employment in his grandfather's painting business and as a laborer, both positions described by Frock as "under the table."

*Id.*

{¶ 18} On appeal, Frock challenged the trial court's failure to consider his present and future ability to pay prior to imposing restitution. We concluded that "[g]iven the lengthy sentence imposed in this case—and the dearth of encouraging information about Frock in the PSI—we are constrained to conclude that the record fails to demonstrate that the court considered Frock's present or future ability to pay restitution." *Id.* at ¶ 9.

{¶ 19} Unlike *Frock*, the trial court in this case explicitly stated on the record that it had considered T.O.'s present and future ability to pay prior to imposing restitution, and the record affirmatively demonstrates that the court considered T.O.'s present and future ability to pay. Furthermore, T.O.'s situation at the time of sentencing was significantly different than Frock's. T.O. was sentenced to community control sanctions, not a term of imprisonment, let alone a lengthy term of imprisonment, there was no evidence of a mental health condition that would have prevented him from working, he had no prior adult criminal history, and he had previously been employed by a landscaping company. The amount of restitution T.O. was ordered to pay was less than a third of the amount Frock was ordered to pay. We cannot agree with T.O. that his situation was similar to

Frock's.

{¶ 20} We likewise do not find *Baker* analogous. In *Baker*, the defendant was found guilty of felony vandalism and burglary following a jury trial. *Baker*, 2016-Ohio-315, at ¶ 6. Prior to sentencing, Baker filed a memorandum disputing the estimates of damage discussed at trial as insufficient proof of actual damages for any order of restitution. *Id.* at ¶ 7. No restitution hearing was held. Baker was sentenced to community control sanctions and ordered to pay a total of $34,711.95 in restitution. *Id.* Although Baker was employed, the trial court ordered her to get a new job that had to be approved by her probation officer. *Id.* At the time of sentencing, Baker was 21 years old, had custody of her four-year-old child, was earning $11 per hour at a warehouse job that she was ordered to quit, and was being treated by a psychologist for mental health issues. *Id.* at ¶ 5, 7.

{¶ 21} One of the issues *Baker* alleged on appeal was that the trial court had erred in failing to hold a restitution hearing when restitution was in dispute. The majority in that case agreed that the trial court had erred in ordering restitution without a hearing. *Id.* at ¶ 15. Accordingly, the court reversed the imposition of restitution and ordered the trial court to hold a restitution hearing upon remand. *Id.* at ¶ 2.

{¶ 22} Another issue Baker raised was that several of the conditions of her community control were not reasonably related to the purposes of felony sentencing, including the nearly $35,000 in restitution. The majority of the court noted that, "[w]ith respect to financial sanctions, including restitution, the court must consider whether the defendant is indigent or has the ability to pay the sanctions." *Id.* at ¶ 30. This was

because " '[a] court that imposes a financial sanction upon an offender may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it.' " *Id.*, quoting R.C. 2929.18(E). Accordingly, the *Baker* majority ordered that, on remand, the trial court should consider Baker's present and future ability to pay. *Id.*

**{¶ 23}** T.O. relies on a statement made in the majority opinion in *Baker* that, "[i]f Baker is unemployed, it is unreasonable to conclude that she has the ability to pay $560 per month in restitution payments." *Id.* at ¶ 30. On remand, the trial court was directed to "consider Baker's ability to pay and create a reasonable repayment plan to begin when she gains full time employment." *Id.* However, this statement was merely dicta. As Judge Welbaum explained in his separate opinion, the "comment about the amount of restitution that was previously ordered to be paid unnecessarily discusses a moot matter, since we are reversing the restitution order and remanding the matter for a hearing. The trial court will decide on remand what, if any, restitution is required." *Id.* at ¶ 37-38 (Welbaum, J., concurring in part and dissenting in part). Judge Welbaum further noted that the majority opinion's observations about the reasonableness of the restitution were "also premature, since the reasonableness of that amount, if any, is an issue to be decided if and when a subsequent appeal occurs." *Id.* at ¶ 38. Because the statement made in the majority opinion was not essential to this court's legal holding, it was merely dicta that does not control the issue before us in this appeal.

**{¶ 24}** We see no reason to conclude that the trial court abused its discretion in this case. Unlike *Baker*, the amount of restitution was not in dispute and no restitution

hearing was required. Rather, as part of the plea agreement, T.O. agreed to pay restitution on all counts in exchange for the State's agreeing to dismiss an additional felony charge. Furthermore, the trial court explicitly found that T.O. had the present and future ability to pay the restitution and, as noted above, the record supports the trial court's decision.

**{¶ 25}** T.O.'s sole assignment of error is overruled.

### III. Conclusion

**{¶ 26}** We will affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.