[Cite as *State v. Scott*, 2019-Ohio-1292.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-10-015 |
| | : | O P I N I O N |
| - vs - | | 4/8/2019 |
| | : | |
| CHRISTOPHER L. SCOTT, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 12-CR-10970


Martin P. Votel, Preble County Prosecuting Attorney, Gractia S. Manning, 101 East Main Street, Courthouse, First Floor, Eaton, Ohio 45320 for appellee

Christopher L. Scott, #A668-909, Chillicothe Correctional Institutional Institution, 15802 State Route 104 North, Chillicothe, Ohio 45601 pro se


**S. POWELL, J.**

{¶ 1} Appellant, Christopher L. Scott, appeals from the decision of the Preble County Court of Common Pleas denying his motion to withdraw his guilty plea to one count of rape, one count of sexual battery, two counts of gross sexual imposition, and one count of importuning. For the reasons outlined below, we reverse in part and remand to the trial

court for the limited purpose of issuing a nunc pro tunc sentencing entry to properly reflect that Scott is subject to a mandatory five-year postrelease control term should he ever be released from prison.  In all other respects, the judgment of the trial court is affirmed.

### Indictment

{¶ 2}  On July 3, 2012, the Preble County Grand Jury returned an eight-count indictment charging Scott with three counts of rape, one count of sexual battery, three counts of gross sexual imposition, and one count of importuning.  With the exception of the lone importuning charge, each of the seven remaining charges included a violent sexual predator specification.  It is undisputed that the three counts charging Scott with rape were all first-degree felonies.

### Bill of Particulars

{¶ 3}  Upon Scott's request, the state filed a bill of particulars detailing the specific allegations giving rise to each of the eight charged offenses.  The following is a recitation of the facts as alleged in the bill of particulars.

{¶ 4}  On June 18, 2012, a deputy with the Preble County Sheriff's Office was dispatched to the Scott residence to investigate a reported sexual assault of a child.  Prior to the deputy's arrival, the deputy was advised that the Sherriff's Office had received a telephone call from Scott's wife, B.S., indicating she had discovered Scott engaging "in inappropriate conduct with her daughter."  At the time this report was made the child was 11 years old.

{¶ 5}  Upon the deputy's arrival, the deputy spoke with B.S.  B.S. advised the deputy that she had awoken to find Scott was not in bed with her.  Seeing that Scott was not in bed, B.S. informed the deputy that she got out of bed only to find Scott naked in her daughter's bedroom.  Shocked by what she had found, B.S. confronted Scott about him inappropriately touching her daughter.  Scott admitted to touching the child inappropriately.

- 2 -

B.S. then ordered Scott out of the house and called the Sherriff's Office to report the sexual assault.

{¶ 6} The deputy then spoke with the child. The child advised the deputy that Scott "had entered her bedroom, removed her shorts and panties off of her, and tried to place his penis in her vagina[.]" The child also informed the deputy that Scott had engaged in similar conduct since she was approximately six years old while the family was living in Indiana. Giving further credence to the allegations levied against Scott, the deputy noted that the child was in "obvious discomfort."

{¶ 7} Unbeknownst to the deputy or B.S., Scott had since gone to the Sheriff's Office to "turn [himself] in." Upon his arrival at the Sheriff's Office, Scott spoke with a different deputy and admitted that he was there "because I was touching my daughter inappropriately."[1] Scott had also informed the deputy that "it had just happened in his daughter's bedroom and that he was 'touching her vagina' with his hands after pulling her bottoms off." Scott, however, "denied any sex, oral sex or intercourse/penetration of any kind but admitted this had happened 'about seven times' since January 2012."

{¶ 8} Upon waiving his *Miranda* rights, Scott admitted significant detail regarding his repeated sexual abuse of the now 11-year-old victim. Specifically, as the bill of particulars states:[2]

> 1. Scott initially admitted that he had gone into the child's bedroom that evening, picked the child up, and placed her on the floor. Scott admitted that he then removed the child's shorts and panties and began rubbing the child's clitoris and vaginal area.
>
> 2. Scott also admitted that he began sexually abusing the child when she was just six years old. This abuse began while the

---

1. Although referring to the child as his daughter, the record indicates the child was actually Scott's stepdaughter.

2. This court has reorganized the bill of particulars detailing Scott's admissions for purposes of clarity and ease of readability.

family lived in Indiana between January of 2007 and March of 2011. Scott admitted that the sexual abuse continued after moving to Preble County in January of 2012.

3. Scott further admitted that he had previously and repeatedly touched the child's vagina and clitoris but "denied any orgasm by either." Scott instead claimed that "after touching the child, he would leave the room to masturbate and ejaculate."

4. Scott claimed there were no other victims besides the child at issue and that the child "never spoke during these incidents and denied being told to 'stop.'"

5. Scott next admitted that he had twice performed cunnilingus on the child while living in the family home in Preble County sometime after January of 2012.

6. Scott additionally claimed that the child had touched his penis on at least one occasion.

7. Scott explained his abhorrent behavior away by claiming he had started sexually abusing the child because "his wife's sex life was very poor and infrequent and/or that the child had come onto him."

## Plea and Sentencing

{¶ 9} On September 14, 2012, Scott entered into a plea agreement and agreed to plead guilty to one count of rape, one count of sexual battery, two counts of gross sexual imposition, and one count of importuning. In exchange for Scott's guilty plea, the state agreed to dismiss the remaining charges and accompanying violent sexual predator specifications. The parties also entered an agreement as to sentencing; specifically, ten years to life in prison for rape, eight years for sexual battery, and five years each for the two gross sexual imposition and importuning offenses. The parties further agreed that the various sentences imposed by the trial court would be served concurrently.

{¶ 10} After engaging Scott in a Crim.R. 11(C) plea colloquy, the trial court accepted Scott's guilty plea upon finding the plea was knowingly, intelligently, and voluntarily entered. The matter then proceeded immediately to sentencing, wherein Scott stated in allocution:

> My actions were selfish, disgusting, beyond carnal what I did. I ruined more than two families by the stupidity of what I have done.
>
> Again, selfishness. I've hurt more people than I ever thought I could by my actions. I wish I could say I was sorry and make it all better, but I can't.
>
> I've hurt so many people, I don't know if even this is enough.

{¶ 11} After hearing from Scott in allocution, the trial court approved and imposed the parties' agreed upon sentence. The trial court also notified Scott that he would be classified as a Tier III sex offender and that he would be subject to a mandatory five-year postrelease control term if he was ever released from prison. The trial court's sentencing entry, however, indicates Scott's mandatory postrelease control term should he ever be released from prison was "mandatory in this case *up to* a maximum of five years." (Emphasis added.)

## Postconviction Proceedings

{¶ 12} Scott did not file a direct appeal from his conviction or sentence. Rather, over three years later, Scott filed a pro se motion to correct void sentence. Scott also filed a pro se motion for judgment on the pleadings. As part of these motions, and as relevant here, Scott argued that his conviction and sentence were void since he was not advised of his appellate rights during the joint plea and sentencing hearing.

{¶ 13} Upon receiving Scott's pro se motions, the trial court reclassified and consolidated the motions as a petition for postconviction relief. Denying Scott's petition as untimely and otherwise lacking all merit, the trial court held:

> The Defendant freely and voluntarily entered pleas of guilty and was sentenced according to the terms negotiated between the Defendant (via his counsel) and the State. He was properly advised by the Court regarding the effect of a guilty plea, his Constitutional rights and the waiver therefore, the nature of the charges, and the maximum penalty for each offense. Therefore, he was sentenced to the agreed terms of imprisonment.

- 5 -

{¶ 14} Scott appealed the trial court's decision denying his petition for postconviction relief. Scott also moved this court for leave to file a delayed appeal from his original conviction and sentence. This court denied Scott's motion for leave and dismissed his appeal in *State v. Scott*, 12th Dist. Preble Case No. CA2016-08-008 (September 21, 2016) (entry denying motion for leave to file delayed appeal).

**Motion to Withdraw Guilty Plea**

{¶ 15} Two years after this court dismissed his appeal, Scott filed a pro se motion to withdraw his guilty plea. In support of this motion, Scott alleged his guilty plea was not knowingly, intelligently, and voluntarily entered due to the trial court's failure to comply with Crim.R. 11(C). Scott based his argument on a number of issues he claimed rendered his conviction and sentence void; namely, the trial court's failure to advise him of his appellate rights as part of the joint plea and sentencing hearing and allegations that the trial court improperly advised him of his registration requirements as a Tier III sex offender. Scott brought this motion pursuant to Crim.R. 32.1.

{¶ 16} On October 5, 2018, the trial court denied Scott's motion to withdraw his guilty plea upon finding the motion was barred by the doctrine of res judicata. But, although finding the doctrine of res judicata applied, the trial court also denied Scott's motion on the merits based on its finding Scott had failed to establish a manifest injustice as required by Crim.R. 32.1. Specifically, as the trial court stated:

> The Court finds no manifest injustice. Even if the Court were to assume that Defendant was not properly advised under Criminal Rule 11 and/or of his registration requirements [as a Tier III sex offender] and the results of a failure to comply with the registration requirements, there is no showing of manifest injustice. The Defendant, with assistance of counsel, negotiated a plea arrangement that allowed Defendant to avoid a possible life sentence because the State agreed to dismiss the sexually violent predator specifications. An agreed sentence was imposed by the Court. The Defendant did not

claim innocence, rather he essentially confessed at sentenc[ing] when given an opportunity to speak.

**Assignment of Error No. 1:**

{¶ 17} Scott now appeals, raising two assignments of error for review. In his first assignment of error, Scott argues the trial court erred by denying his motion to withdraw his guilty plea. We disagree.

**Standard of Review: Crim.R. 32.1**

{¶ 18} Pursuant to Crim.R. 32.1, "a defendant who seeks to withdraw a guilty plea after the imposition of the sentence has the burden of establishing the existence of a manifest injustice." *State v. Reeder*, 12th Dist. Butler Case Nos. CA2013-05-075 and CA2013-07-126, 2014-Ohio-2233, ¶ 23. Manifest injustice relates to a fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 13. "This sets forth an extremely high standard that is allowable only in extraordinary cases." *State v. Tringelof*, 12th Dist. Clermont Nos. CA2017-03-015 and CA2017-03-016, 2017-Ohio-7657, ¶ 10, citing *State v. Sturgill*, 12th Dist. Clermont No. CA2014-09-066, 2015-Ohio-1933, ¶ 9.

{¶ 19} "A trial court's decision regarding a post-sentence motion to withdraw a guilty plea is reviewed on appeal under an abuse of discretion standard." *State v. Rose*, 12th Dist. Butler No. CA2010-03-059, 2010-Ohio-5669, ¶ 15. An abuse of discretion is more than an error of law or judgment. *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. A decision is unreasonable when it is "unsupported by a sound reasoning process." *State v. Abdullah*, 10th Dist. Franklin No. 07AP-427, 2007-Ohio-7010, ¶ 16, citing

*AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**The Doctrine of Res Judicata and Crim.R. 32.1**

{¶ 20} Scott initially argues the trial court erred by finding his motion to withdraw his guilty plea was barred by the doctrine of res judicata. In support, Scott argues that because the trial court did not advise him of his appellate rights at the joint plea and sentencing hearing that his conviction and sentence are void. Therefore, because the doctrine of res judicata does not apply to a void sentence, Scott argues the trial court was required to grant his motion and vacate his guilty plea. Scott's claim lacks merit.

{¶ 21} While it is true that the doctrine of res judicata does not apply to a void sentence, the trial court's failure to advise Scott that he had a right to appeal does not render his conviction or sentence void. *See State v. Barnes*, 12th Dist. Warren No. CA2014-03-049, 2015-Ohio-651, ¶ 27 (trial court's failure to advise appellant of his right to appeal did not render appellant's conviction void); *see also State v. Cuthbert*, 5th Dist. Fairfield No. 18-CA-33, 2019-Ohio-96, ¶ 10 ("[a] trial court's failure to notify a defendant concerning appeal rights, however, does not render a sentence void"); *State v. Smotherman*, 10th Dist. Franklin No. 16AP-471, 2016-Ohio-8133, ¶ 13 (a trial court's failure to inform a defendant regarding his or her appellate rights does not render a sentence void).

{¶ 22} The doctrine of res judicata applies and bars claims raised in a Crim.R. 32.1 postsentence motion to withdraw a guilty plea that were either raised or could have been raised in a prior proceeding. *State v. Rose*, 12th Dist. Butler No. CA2010-03-059, 2010-Ohio-5669, ¶ 18; *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 11 (claims raised in support of a Crim.R. 32.1 postsentence motion to withdraw a plea that could have been raised on direct appeal, but were not, are barred by res judicata).

{¶ 23} Here, as noted above, Scott argues his conviction and sentence are void

because the trial court did not advise him of his appellate rights at the joint plea and sentencing hearing. But, as the record indicates, Scott raised this same argument as part of his petition for postconviction relief. The trial court denied Scott's petition as untimely and otherwise lacking all merit. Scott then appealed. This court dismissed Scott's appeal and further denied Scott's motion for leave to file a delayed appeal. Because Scott has previously raised this same issue with both the trial court and this court, the doctrine of res judicata clearly applies to bar Scott's claim. Scott's claim to the contrary lacks merit.

**Mandatory Five-Year Postrelease Control Term**

{¶ 24} Scott also argues the trial court erred by denying his motion to withdraw his guilty plea because the trial court misinformed him that he would be subject to a mandatory five-year postrelease control term should he ever be released from prison. However, contrary to Scott's claim, the plain and unambiguous language found in R.C. 2967.28(B)(1) mandates the exact opposite holding. That statute specifically states that a mandatory five-year postrelease control term is required for an offender convicted of "a felony of the first degree or for a felony sex offense[.]" This, as the record indicates, includes Scott's conviction for rape.

{¶ 25} This court's holding is confirmed by the Ohio Supreme Court's decision in *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 2010-Ohio-2671. As the Ohio Supreme Court held in that case:

> After applying the rules of grammar and common usage to R.C. 2967.28(B)(1), we find that the statute's plain, unambiguous language expressly requires the inclusion of a mandatory postrelease-control term of five years for each prison sentence for felonies of the first degree and felony sex offenses. [Appellant] was convicted of rape in violation of R.C. 2907.02, which is both a felony of the first degree and a felony sex offense. Therefore, R.C. 2967.28(B) required that a five-year term of postrelease control be included in his sentence.

(Internal citations omitted.) *Id.* at ¶ 14.

{¶ 26} Relying on the Ohio Supreme Court's holding in *McCormick*, this court in *State v. Miller*, 12th Dist. Clermont No. CA2011-04-028, 2012-Ohio-995, found "the trial court erred in its sentencing of appellant when it failed to impose a mandatory five-year term of postrelease control for each of appellant's three rape convictions because rape is both a felony of the first degree and a felony sex offense." *Id.* at ¶ 36; *see also State v. Peace*, 11th Dist. Portage No. 2017-P-0037, 2018-Ohio-3742, ¶ 32 ("[u]pon sentencing a defendant, a court must impose post-release control for first-degree felonies and felony sex offenses even when the sentence is life in prison without parole"). Therefore, because Scott will be subject to a mandatory five-year postrelease control term should he ever be released from prison, the trial court did not err by advising him of his postrelease control obligations at the joint plea and sentencing hearing. Scott's claim to the contrary again lacks merit.

**Mandatory Postrelease Control "Up To" a Maximum of Five Years**

{¶ 27} Scott next argues the trial court erred by denying his motion to withdraw his guilty plea because the trial court's sentencing entry erroneously stated that his postrelease control term was "mandatory in this case *up to* a maximum of five years." (Emphasis added.) Due to the mandatory nature of Scott's five-year postrelease control term, we agree that the trial court improperly stated in its sentencing entry that his postrelease control term was "up to" a maximum of five years.

{¶ 28} This confusion is further exacerbated by the fact that the trial court's sentencing entry also stated in the following sentence that Scott "shall serve a mandatory period of post release control of five years[.]" Due to this confusion, we find the portion of the trial court's sentencing entry failing to properly notify Scott of postrelease control obligations is void. *See State v. Bregen*, 12th Dist. Clermont No. CA2010-06-039, 2011-Ohio-1872, ¶ 25, citing *State v. Fischer*, 128 Ohio St. 3d 92, 2010-Ohio-6238, paragraph one of the syllabus.

{¶ 29} But, rather than rendering Scott's entire conviction and sentence void, it is well-established that "the imperfect sentencing entry can be corrected through a nunc pro tunc entry." *State v. Williams*, 12th Dist. Butler No. CA2018-03-055, 2018-Ohio-3990, ¶ 18. Therefore, because this error may be corrected through a nunc pro tunc sentencing entry, we set aside the trial court's sentencing entry as it relates to its imposition of postrelease control only and remand this matter to the trial court. Upon remand, the trial court shall issue a nunc pro tunc sentencing entry to properly reflect that Scott is subject to a mandatory five-year postrelease control term should he ever be released from prison.

{¶ 30} The error in the trial court's sentencing entry does not render his guilty plea anything less than knowingly, intelligently, and voluntarily entered. Scott was properly advised at the joint plea and sentencing hearing that he would be subject to a mandatory five-year postrelease control term. As the trial court stated:

> THE COURT: There are several offenses. The first is entitled Rape, an alleged violation of Section 2907.02(A)(1)(b), it is a felony of the first degree. The maximum penalty is ten years to life. You would be required to serve at least ten years. You could be required to serve the rest of your life. You would be eligible for parole, but not until you have at least served the ten years.
>
> The maximum fine is $20,000. When you are released from prison, you will be released on a mandatory period of postrelease control of five years, and that means that during five years after your release you must comply with the conditions of postrelease control, and if you don't you can be sent back to prison to serve additional time up to a maximum of one-half of whatever the original sentence was that was issued by the Court.

{¶ 31} The trial court then asked Scott if he understood the nature of the charge and maximum penalty he faced by pleading guilty. Scott responded by stating "Yes, sir." The fact that the trial court's sentencing entry created some confusion as to the mandatory nature of Scott's five-year postrelease control term falls well short of what could be

considered a manifest injustice at such a late stage in the proceedings. This is certainly the case here when considering the trial court issued its sentencing entry *after* Scott had already entered his guilty plea. Scott's claim otherwise lacks merit.

**Requirements and Restrictions of a Tier III Sex Offender**

{¶ 32} Scott finally argues the trial court erred by denying his motion to withdraw his guilty plea because the trial court incorrectly advised him, as a Tier III sex offender, that the various requirements and restrictions found in R.C. Chapter 2950 were "not necessarily a penalty." Scott properly notes that the Ohio Supreme Court has found those requirements and restrictions are punitive and not remedial. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 16 ("[f]ollowing the enactment of S.B. 10, all doubt has been removed: R.C. Chapter 2950 is punitive"). But, despite the trial court's misstatement, there is nothing in the record to indicate the punitive nature of R.C. Chapter 2950 played any part in Scott's decision to plead guilty.

{¶ 33} Given the serious nature of the charges, it is clear that Scott accepted the state's plea agreement to avoid the possibility of being sentenced to life in prison without the possibility of parole. The punitive or remedial nature of R.C. Chapter 2950 had little, if any, impact on Scott's decision on whether to plead guilty. This is undoubtedly the case here when considering the trial court specifically advised Scott that by pleading guilty he may never be released from prison. As the trial court stated, "none of this will apply until you are released from prison, if you are ever released from prison." Scott's release from prison was, and presumably still is, a necessary condition for the various requirements and restrictions found in R.C. Chapter 2950 to apply. This too falls well short of what could be considered a manifest injustice.

{¶ 34} In light of the foregoing, we find the trial court did not abuse its discretion by denying Scott's motion to withdraw his guilty plea. This is because, as addressed more

fully above, Scott failed to establish the existence of a manifest injustice. Regardless of any error in the trial court's plea colloquy, or in the trial court's sentencing entry, the record is clear that Scott's plea was knowingly, intelligently, and voluntarily entered. But, although the trial court did not err by denying Scott's motion to withdraw his guilty plea, this matter must nevertheless be reversed, in part, and remanded to the trial court to issue a nunc pro tunc sentencing entry to properly reflect that Scott is subject to a mandatory five-year postrelease control term should he ever be released from prison.

**Assignment of Error No. 2:**

{¶ 35} In his second assignment of error, Scott argues he received ineffective assistance of counsel. In support, Scott claims the record is "obvious" that his trial counsel had a "complete ignorance of the law." Scott also claims his trial counsel improperly advised him that he "had no choice but to plead" guilty and egregiously informed him that "he had no right to appeal." We again disagree.

**Standard of Review: Ineffective Assistance of Counsel**

{¶ 36} "Ineffective assistance of counsel is a proper basis for seeking a post-sentence withdrawal of a guilty plea." *State v. Worthington*, 12th Dist. Brown No. CA2014-12-022, 2015-Ohio-3173, ¶ 16. To establish ineffective assistance of counsel, appellant must show that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693, 104 S.Ct. 2052 (1984). Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *State v. Robinson*, 12th Dist. Butler No. CA2014-12-256, 2015-Ohio-4649, ¶ 48. The proponent of an ineffective assistance claim must establish both elements to warrant relief. *State v. Knowlton*, 4th Dist. Washington No. 10CA31, 2012-Ohio-2350, ¶ 35. Failure to satisfy one prong of the ineffective assistance test renders review of the other prong unnecessary.

*State v. Napier*, 12th Dist. Clermont Nos. CA2014-06-039 and CA2014-06-046, 2015-Ohio-1413, ¶ 12.

### The Doctrine of Res Judicata and Ineffective Assistance of Counsel

{¶ 37} Scott's claim that he received ineffective assistance of counsel is barred by the doctrine of res judicata. "Res judicata bars a petitioner from 're-packaging' evidence or issues that either were or could have been raised in trial or on direct appeal." *State v. Casey*, 12th Dist. Clinton No. CA2017-08-013, 2018-Ohio-2084, ¶ 15, citing *State v. Rose*, 12th Dist. Butler No. CA2012-03-050, 2012-Ohio-5957, ¶ 20. Scott's ineffective assistance of counsel claim could have been raised on direct appeal. Scott, however, did not file a direct appeal from his conviction or sentence. The doctrine of res judicata therefore clearly applies to bar Scott's ineffective assistance of counsel claim raised herein.

{¶ 38} But, even if Scott's claim was not barred, Scott can point to nothing in the record to indicate his trial counsel provided him with anything approaching ineffective assistance of counsel. The record instead indicates Scott's trial counsel worked diligently to obtain a favorable plea agreement that removed the potential for Scott to be sentenced to life in prison without the possibility of parole. This is true despite the extremely serious and disturbing charges that Scott faced after admitting to sexually abusing the 11-year-old victim beginning when the child was just six years old. This includes Scott admitting to twice raping the child by performing cunnilingus on the child victim.

{¶ 39} In so holding, we note that Scott specifically admitted to sexually abusing the child as part of his allocution. Again, as Scott stated in allocution:

> My actions were selfish, disgusting, beyond carnal what I did. I ruined more than two families by the stupidity of what I have done.
>
> Again, selfishness. I've hurt more people than I ever thought I could by my actions. I wish I could say I was sorry and make it all better, but I can't.

I've hurt so many people, I don't know if even this is enough.

We agree with Scott's sentiments and reiterate that Scott's conduct was undoubtedly selfish, disgusting, shortsighted, and beyond carnal.

{¶ 40} In light of the foregoing, we find the trial court did not err by denying Scott's motion to withdraw his guilty plea based on his trial counsel's alleged ineffective assistance. "The attorney is there to give informed advice, to relate worse case scenarios to his client, and to make a recommendation regardless of whether it makes the client upset." *State v. Shugart*, 7th Dist. Mahoning No. 08 MA 238, 2009-Ohio-6807, ¶ 37. The record indicates Scott's trial counsel did just that. Therefore, because his ineffective assistance of counsel claim is barred by the doctrine of res judicata, and because the record is devoid of any evidence that Scott was provided with any other than sound advice in light of the overwhelming evidence against him, Scott's second assignment of error lacks merit and is overruled.

**Conclusion**

{¶ 41} The trial court did not abuse its discretion by denying Scott's motion to withdraw his guilty plea. Despite Scott's claims to the contrary, the record fully supports the trial court's decision finding Scott failed to establish a manifest injustice. Therefore, finding no merit to any of the arguments raised herein, the trial court's decision denying Scott's motion is affirmed. But, due to some confusion in the trial court's sentencing entry as it relates to the imposition of postrelease control, this case must nevertheless be reversed, in part, and remanded to the trial court to issue a nunc pro tunc sentencing entry to properly reflect that Scott is subject to a mandatory five-year postrelease control term should he ever be released from prison.

{¶ 42} Judgment reversed in part and remanded to the trial court for the limited

- 15 -

purpose of issuing a nunc pro tunc sentencing entry to correct its imposition of a mandatory five-year postrelease control term. In all other respects, the judgment of the trial court is affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.