[Cite as *State v. Ramirez*, 2019-Ohio-3050.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-12-233 |
| | : | O P I N I O N |
| - vs - | | 7/29/2019 |
| | : | |
| ALEXIS RAMIREZ, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2010-03-0542


Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, OH 45011, for appellee

Jazmin E. Harris, 15 E. Eighth Street, Cincinnati, OH 45202, for appellant


**S. POWELL, P.J.**

{¶ 1} Appellant, Alexis Ramirez, appeals the decision of the Butler County Court of Common Pleas denying his motion to withdraw his no contest plea to single counts of aggravated burglary, aggravated robbery, felonious assault, and tampering with evidence, as well as two counts of kidnapping, and three counts of rape. For the reasons outlined below, we affirm the trial court's decision.

**Facts and Procedural History**

{¶ 2} On April 28, 2010, the Butler County Grand Jury returned an indictment charging Ramirez with the nine above-named offenses. The charges arose after Ramirez knocked on the door to the 64-year-old victim's home and demanded she give him money. Ramirez, who at that time was heavily intoxicated and allegedly high on marijuana, was holding a black pellet gun with a t-shirt covering his face. When the victim told Ramirez she did not have any money to give him, Ramirez forced his way into the victim's home and ordered the victim to take off her clothes. The victim refused. Ramirez then struck the victim in the head with the pellet gun. This blow to the victim's head resulted in the victim suffering a laceration to her head that required several staples to close.

{¶ 3} After striking the victim in the head, Ramirez again demanded the victim take off her clothes. Unsure of what Ramirez would do if she refused for a second time, the victim relented to Ramirez's demands and took off her clothes. Ramirez then raped the victim in various rooms throughout the victim's home both orally and vaginally. These rapes lasted over an hour and caused the victim to sustain significant injuries to her person. After raping the victim multiple times, Ramirez then ordered the victim drive him to a nearby ATM. While en route to the ATM, Ramirez demanded the victim to let him drive. The victim refused. Ramirez then swung the car door open, grabbed the victim's purse, and fled on foot. There is no dispute that Ramirez was just 14 years old at the time the offenses occurred. There is also no dispute that Ramirez is not a United States citizen.[1]

{¶ 4} On August 20, 2010, the parties appeared before the trial court for a change of plea hearing. As part of this hearing, Ramirez notified the trial court he wanted to withdraw his plea of not guilty by reason of insanity and enter a plea of no contest to all nine

---

1. Ramirez was born in Mexico and brought to the United States by his family when he was four years old.

charges. Prior to accepting Ramirez's plea, there is no dispute that the trial court adhered to its statutory duty set forth in R.C. 2943.031(A) by notifying Ramirez that by entering a no contest plea he "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." *See State v. Perry*, 5th Dist. Muskingum No. CT2018-0045, 2019-Ohio-2699, ¶ 24 ("Revised Code R.C. 2943.031(A) describes the duty of the trial court to provide the warning therein as a mandatory obligation by the use of the word 'shall' most often used to designate a clear requirement").

{¶ 5} Upon being so advised, the trial court asked Ramirez if he understood the advisement and the implications of what may occur if he entered a no contest plea. Ramirez responded that he understood that he "could get deported for what [he had] done" and that he "could not be a citizen and try to come back." Following this exchange, the trial court engaged Ramirez in the necessary Crim.R. 11 plea colloquy. Once the plea colloquy concluded, the trial court asked Ramirez how he wished to plea. Ramirez responded by entering a plea of no contest to each of the nine charges set forth in the indictment. The trial court accepted Ramirez's no contest plea upon finding the plea was knowingly, intelligently, and voluntarily entered. Satisfied with Ramirez's no contest plea, the trial court then issued its decision finding Ramirez guilty as charged.

{¶ 6} On October 8, 2010, the trial court held a sentencing hearing. As part of this hearing, the trial court notified Ramirez that it was its "understanding" that he would be deported following his release from prison. There is nothing in the record to indicate this came as a surprise to Ramirez or that Ramirez had not previously been advised by his trial counsel of the immigration consequences resulting from his conviction. This includes the fact that Ramirez would be deported upon his release from prison. Rather, when asked if he understood that he would be deported upon his release, as well as if he understood the

consequences of being classified as a Tier III sex offender, Ramirez responded, "Yes, sir."

{¶ 7} Following this exchange, the trial court heard from Ramirez's trial counsel in mitigation. As part of mitigation, Ramirez's trial counsel argued the trial court should impose a comparatively lighter sentence on Ramirez, an undocumented immigrant who would be deported following his release from prison, when considering the significant costs to house an inmate within the state penitentiary system. Specifically, Ramirez's trial counsel stated that "[w]hen this case all started the sheriff of this county placed a holder on [Ramirez] and notified the immigration authorities, and I don't think there's a question that whatever sentence he gets, at the very end of this, he is going to be deported to Mexico." Ramirez's trial counsel also stated that "[Ramirez] will never legally be allowed back into this country again." There is again nothing in the record to indicate this came as a surprise to Ramirez or that Ramirez had not previously been advised by his trial counsel of the immigration consequences resulting from his conviction. This, once again, includes the fact that Ramirez would be deported upon his release from prison.

{¶ 8} Ramirez's trial counsel also argued that a lighter sentence should be imposed due to Ramirez's young age, immaturity, and below average intelligence. This was in addition to Ramirez's lack of insight and judgment, apparent inability to control his impulses, and heavy intoxication at the time the offenses occurred. Ramirez's trial counsel also noted that he had recently been appointed trial counsel in several other cases that carried less significant sentences than what Ramirez faced in this case. This included a case where his client was alleged to have murdered the victim by beating the victim with a baseball bat. Concluding, Ramirez's trial counsel argued that Ramirez was not "evil," "that's not who he is," but that Ramirez was instead just a "little kid, and that's the way I look at him."

{¶ 9} Following mitigation, the trial court provided Ramirez with his right to allocution. As part of allocution, Ramirez informed the trial court that he knew society looked

at him "as a monster and they have every right to," but that he nevertheless wanted the victim and the victim's family "to sleep at night knowing that I got what I deserved." Ramirez also informed the trial court that he knew he "really hurt" the victim, that he "did something terrible to an innocent lady," and that he did not blame anybody else for what he did. Ramirez further admitted that he "did it," that he could not live with himself, and that he was "really stupid" and ashamed of his actions. Ramirez additionally stated that he was sorry for making such a terrible mistake, that he hated himself, and that he did not know how to live anymore. Concluding, Ramirez stated, "I'm guilty and whatever you give me, I'll do it."

{¶ 10} After Ramirez exercised his right to allocution, the trial court addressed Ramirez personally and notified him that this case had been very difficult when considering "victim and the victim's family have been through a terrible, unspeakable incident." Shortly thereafter, and upon noting that it had considered the necessary sentencing statutes, the trial court sentenced Ramirez to a mandatory 28-year prison term. The trial court also notified Ramirez that he "will be deported" upon his release from prison. Just as before, there is nothing in the record to indicate this came as a surprise to Ramirez or that he had not previously been advised by his trial counsel of the immigration consequences resulting from his conviction. This, as noted above, includes the fact that Ramirez would be deported upon his release from prison.

{¶ 11} On October 19, 2010, the trial court issued a sentencing entry setting forth its decision sentencing Ramirez to a mandatory 28-year prison term. As part of its sentencing entry, the trial court specifically stated that "[u]pon completion of sentence defendant is to be deported."

{¶ 12} On November 8, 2010, Ramirez appealed his conviction and sentence to this court. On appeal, Ramirez did not argue that his plea was defective due to his trial counsel's alleged failure to advise him that he would be deported if the trial court accepted his no

contest plea and found him guilty. Ramirez instead argued: (1) the juvenile court erred by finding he was not amenable to rehabilitation within the juvenile system; (2) the trial court erred by finding him competent to stand trial; and that (3) the trial court erred by failing to find a number of charges were allied offenses of similar import. Finding merit to Ramirez's claim that the trial court erred by failing to merge one of the kidnapping charges with one of the rape offenses, this court reversed and remanded the matter to the trial court for the limited purpose of resentencing. *State v. Ramirez*, 12th Dist. Butler No. CA2010-11-305, 2011-Ohio-6531, appeal not allowed, 131 Ohio St.3d 1511, 2012-Ohio-1710. .

{¶ 13} On July 26, 2013, the trial court held a resentencing hearing. The record on appeal does not contain a transcript of this hearing. The record nevertheless establishes that the trial court resentenced Ramirez to the same mandatory 28-year prison term. Approximately two weeks later, on August 12, 2013, the trial court issued a resentencing entry. This resentencing entry, just as the trial court's original sentencing entry, also specifically stated that "[u]pon completion of sentence defendant is to be deported." Ramirez did not appeal from the trial court's resentencing decision.

{¶ 14} On June 23, 2017, six years ten months and three days after Ramirez entered his no contest plea, Ramirez moved to withdraw his plea in accordance with Crim.R. 32.1. Pursuant to that rule, a defendant who seeks to withdraw his or her plea after the imposition of the sentence has the burden of establishing the existence of a manifest injustice. *State v. Reeder*, 12th Dist. Butler Case Nos. CA2013-05-075 and CA2013-07-126, 2014-Ohio-2233, ¶ 23. Manifest injustice relates to a fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 13. "This sets forth an extremely high standard that is allowable only in extraordinary cases." *State v. Tringelof*, 12th Dist. Clermont Nos. CA2017-03-015 and CA2017-03-016, 2017-Ohio-7657, ¶ 10,

citing *State v. Sturgill*, 12th Dist. Clermont No. CA2014-09-066, 2015-Ohio-1933, ¶ 9.

{¶ 15} Ramirez supported his motion to withdraw by alleging his trial counsel provided him with ineffective assistance by failing to advise him of the immigration consequences he faced by entering a no contest plea. This, as Ramirez alleged, included the fact that he would be deported upon his release from prison if the trial court accepted his no contest plea and found him guilty. As part of his motion, Ramirez claimed his arguments were supported by a memorandum in support and an affidavit executed by his mother. However, while a memorandum in support was attached, there was no affidavit executed by Ramirez's mother (or anybody else) attached to the motion. There can be no dispute that the affidavit executed by Ramirez's mother was never made a part of the record before the trial court or with this court on appeal.

{¶ 16} Ramirez's arguments advanced in his motion to withdraw were based primarily on the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010). In *Padilla*, the Supreme Court held that the Sixth Amendment imposes upon a defendant's trial counsel, in negotiating a guilty or no contest plea, the duty to accurately advise a noncitizen client concerning the immigration consequences of the plea. *Id.* at 364. "Counsel breaches this duty by either providing affirmative misadvice about immigration consequences or by not providing any advice at all when advice is warranted." *State v. Tapia-Cortes*, 12th Dist. No. CA2016-02-031, 2016-Ohio-8101, ¶ 14, citing *id.* at 370-371, 374. Therefore, when the immigration consequences can easily be determined from reading the removal statute, and the deportation consequence is "truly clear," the Supreme Court found "the duty to give correct advice is equally clear." *Padilla* at 369.

{¶ 17} On November 30, 2018, the trial court issued a decision denying Ramirez's motion to withdraw his no contest plea. In so holding, the trial court stated:

> The Defendant claims the manifest injustice in this case by a bald assertion of ineffective assistance of counsel. There is no affidavit or reference to new evidence or information to support the argument that defense counsel was ineffective. There is no evidence to support the argument that the Defendant did not comprehend the consequences of a conviction on this case on the [Defendant's] residency status, deportation and exclusion from the United States at the time of the plea or sentencing.

The trial court concluded by finding Ramirez had failed to meet his burden of proof under Crim.R. 32.1 that required him to provide "evidence that would support a finding of manifest injustice."

**Appeal**

{¶ 18} Ramirez now appeals the trial court's decision, raising two assignments of error for review. In each of his two assignments of error, Ramirez argues the trial court erred by denying his motion to withdraw his no contest plea upon finding Ramirez failed to establish that a manifest injustice had occurred.[2] Raising the same general arguments he advanced before the trial court, Ramirez supports his claim by relying on the United States Supreme Court's decision in *Padilla*. After a full and thorough review of the record, we find no merit to any of Ramirez's claims raised herein.[3] That is to say we find the trial court's decision to deny Ramirez's motion to withdraw was not unreasonable, arbitrary, or

---

2. When faced with these same basic arguments, the court has addressed the merits of the appellant's claim rather than overruling the appeal based on the doctrine of res judicata. *See State v. Guzman*, 12th Dist. Butler No. CA2015-11-198, 2016-Ohio-1487, ¶ 8 (noting that this court would address the merits of appellant's claim rather than rely on the doctrine of res judicata where appellant argued the trial court erred by denying his motion to withdraw his guilty plea by alleging "his defense counsel was ineffective for failing to advise him of the immigration consequences of his plea" in accordance with the holding set forth in *Padilla*).

3. The state requested this court to avoid ruling on the merits of Ramirez's two assignments of error due to this court having already affirmed Ramirez's conviction and sentence on direct appeal. However, being just 15 years old at the time he entered his no contest plea, we believe Ramirez should have his claims addressed on the merits rather than overruled on other more procedural grounds. We find this to be appropriate despite this court's prior holding that when a case is remanded to the trial court solely for the limited purpose of resentencing, and the sentence is not void, the trial court does not have jurisdiction to entertain a motion to withdraw a plea. *State v. Simon*, 12th Dist. Butler No. CA2015-05-081, 2015-Ohio-4448, ¶ 19-20; discretionary appeal not allowed, 144 Ohio St.3d 1507, 2016-Ohio-652, citing *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 15 ("[i]n a remand based only on an allied-offenses sentencing error, the guilty verdicts underlying a defendant's sentences remain the law of the case and are not subject to review").

unconscionable so as to constitute an abuse of discretion. The trial court's decision denying Ramirez's motion to withdraw must therefore be affirmed.

**Standard of Review**

{¶ 19} The decision to grant or deny a motion to withdraw a guilty or no contest plea is within the trial court's sound discretion. *State v. Carter*, 12th Dist. Clinton Nos. CA2010-07-012 and CA2010-08-016, 2011-Ohio-414, ¶ 16. This court reviews a trial court's decision to deny a motion to withdraw a plea brought under Crim.R. 32.1 under an abuse of discretion standard. *State v. Ward*, 12th Dist. Clermont No. CA2008-09-083, 2009-Ohio-1169, ¶ 8, citing *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, ¶ 32. An abuse of discretion is more than an error of law or judgment. *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. A decision is unreasonable when it is "unsupported by a sound reasoning process." *State v. Abdullah*, 10th Dist. Franklin No. 07AP-427, 2007-Ohio-7010, ¶ 16, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**Analysis**

{¶ 20} As noted above, relying primarily on the Supreme Court's decision in *Padilla*, Ramirez argues his trial counsel provided him with ineffective assistance by not advising him of the immigration consequences he faced by entering a no contest plea. This, as stated previously, includes the fact that Ramirez would be deported upon his release from prison if the trial court accepted his no contest plea and found him guilty. We find no merit to Ramirez's claims.

{¶ 21} Ineffective assistance of counsel is a proper basis for seeking a post-sentence withdrawal of a plea. *State v. Taveras*, 12th Dist. Warren No. CA2016-06-054, 2017-Ohio-

1496, ¶ 17. When an alleged error underlying a motion to withdraw is ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have entered his or her plea. *State v. Guerrero*, 12th Dist. Butler No. CA2010-09-231, 2011-Ohio-6530, ¶ 5, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). "The proponent of an ineffective assistance claim must establish both elements to warrant relief." *State v. Robinson*, 12th Dist. Butler No. CA2014-12-256, 2015-Ohio-4649, ¶ 48. Therefore, rather than focusing on whether a defendant entered his plea knowingly, intelligently, and voluntarily, when "the defendant asserts a claim of ineffective assistance of counsel, the court must focus on counsel's deficient performance and the prejudice arising from that deficiency." (Emphasis omitted.) *State v. Romero*, Slip Opinion No. 2019-Ohio-1839, ¶ 18. This requires the court to "determine whether the totality of circumstances supports a finding that counsel's performance was deficient, and if so, whether the deficient performance was prejudicial to the defendant." *Id.* at ¶ 34.

{¶ 22} Before addressing Ramirez's claims under *Padilla*, we note that Ramirez also argues his trial counsel provided him ineffective assistance since his trial counsel "virtually did nothing, just pled [him] to the indictment." However, contrary to Ramirez's claim, the record indicates his trial counsel did much more than just plead him to the indictment. Ramirez's trial counsel filed a demand for discovery, a request for a bill of particulars, a motion for an evaluation of Ramirez's competency to stand trial, a written plea of not guilty by reason of insanity, and a motion for continuance so that his trial counsel could have more time to review the competency report finding Ramirez competent to stand trial. This hardly constitutes doing "virtually nothing" as Ramirez suggests.

{¶ 23} The record indicates Ramirez's trial counsel also vigorously defended Ramirez's interests at the competency hearing, as well as at both the change of plea and

- 10 -

sentencing hearings. This was in addition to counsel arguing that a number of the charges should be merged as allied offenses of similar import at sentencing – an argument this court found meritorious on appeal. *See Ramirez*, 2011-Ohio-6531 at ¶ 62 ("[i]nsofar as the trial court failed to merge the offense of kidnapping and the first rape at sentencing, the judgment of the trial court imposing individual sentences for these offenses is reversed and this matter is remanded for further proceedings according to law and consistent with this opinion").

**{¶ 24}** Ramirez himself even acknowledged that he was satisfied with his trial counsel's performance prior to entering his no contest plea. Specifically, as Ramirez stated at the change of plea hearing:

> THE COURT: Did you go over these plea forms with [your trial counsel]?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And have you been satisfied with the advice and counsel [your trial counsel] has given you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you and [your trial counsel] have enough time to discuss your plea this morning?
>
> THE DEFENDANT: We did.
>
> THE COURT: Did you and [your trial counsel] have enough time to go over each one of these charges and how much time you might be facing – how much incarceration and other penalties you may be facing if you plead no contest?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And [trial counsel] has answered all of your questions?
>
> THE DEFENDANT: All of them.

Therefore, even with just a modest review of the record, Ramirez's claim that his trial counsel "virtually did nothing, just pled [him] to the indictment" is incorrect and not supported

by the record.

{¶ 25} The same is true regarding Ramirez's claim that his trial counsel engaged in professional misconduct by exhibiting a "lack of empathy and care" for Ramirez as a 15-year-old child facing a significant 83-year prison sentence. However, based on Rule 1.3 of the Rules of Professional Conduct, Ramirez's trial counsel had no duty other than "to act with commitment and dedication" to Ramirez's interests in defending against the serious nature of the charges levied against him. Yet, even then, the record in this case reveals Ramirez's trial counsel actually did exhibit both empathy and care for Ramirez. This is clear when considering Ramirez's trial counsel's statement during mitigation that he believed Ramirez was not "evil," "that's not who he is," but instead that Ramirez was just a "little kid, and that's the way I look at him." Therefore, even if we were to find Ramirez's trial counsel had a duty to exhibit "empathy and care" for Ramirez, which we do not, the record indicates Ramirez's trial counsel exhibited both empathy and care when defending Ramirez's interests before the trial court. Ramirez's claims otherwise lack merit.

{¶ 26} Turning now to Ramirez's claims under *Padilla*, as noted above, Ramirez argues his trial counsel was ineffective for not advising him that he would be deported if the trial court accepted his no contest plea and found him guilty, "no ifs or buts." Ramirez supports this claim by making the bold and bare assertion that the mere fact he pled no contest "to the charges that he did is irrefutable proof that his attorney failed to research the immigration law as he was required to do under *Padilla v. Kentucky*." Therefore, based solely on the fact that he entered a no contest plea, Ramirez claims that it is "clear" his trial counsel failed to research and advise him – as his youthful, "profoundly disturbed," non-citizen client – of the immigration consequences he faced by entering a no contest plea. We disagree.

{¶ 27} Under the first prong of *Strickland*, it must first be determined whether

Ramirez's trial counsel "fulfilled his duty under the Sixth Amendment to inform his client whether his guilty [or no contest] pleas carry a risk of deportation." *Romero*, 2019-Ohio-1839 at ¶ 21. However, while it must be determined whether Ramirez's trial counsel fulfilled this duty, the simple fact that Ramirez pled no contest is not "irrefutable proof" that his trial counsel failed in his responsibilities under *Padilla*. This is because the decision whether to enter a plea is reserved solely for the defendant. *See State v. Doty*, 12th Dist. Clermont No. CA2018-07-055, 2019-Ohio-917, ¶ 15, citing *McCoy v. Louisiana*, __U.S.__, 138 S.Ct. 1500, 1508 (2018); *see also* Rule 1.2(a) of the Rules of Professional Conduct ("[i]n a criminal case, the lawyer shall abide by the client's decision as to a plea to be entered"). Therefore, while Ramirez suggests otherwise, rather than mandating a defendant to accept or reject a plea agreement, "[t]he attorney is there to give informed advice, to relate worse case scenarios to his [or her] client, and to make a recommendation regardless of whether it makes the client upset." *State v. Shugart*, 7th Dist. Mahoning No. 08 MA 238, 2009-Ohio-6807, ¶ 37.

{¶ 28} We acknowledge that there may be some question as to whether Ramirez's trial counsel merely advised Ramirez that he *could* be deported upon his release from prison rather than the fact that he *would* be deported. But, when reviewing the record in its entirety, we find it more likely that Ramirez's trial counsel properly advised Ramirez of the immigration consequences he faced should he enter a no contest plea; namely, that he would be deported upon his release from prison. This includes the exchanges between Ramirez, Ramirez's trial counsel, and the trial court at both the change of plea and sentencing hearings. This is most telling when reviewing Ramirez's trial counsel's statements at sentencing, wherein Ramirez's trial counsel stated during mitigation not only that "[w]hen this case all started the sheriff of this county placed a holder on [Ramirez] and notified the immigration authorities, and I don't think there's a question that whatever

sentence he gets, at the very end of this, he is going to be deported to Mexico," but also that "[Ramirez] will never legally be allowed back into this country again." Because there is nothing in the record to indicate this came as a surprise to Ramirez, we find it fair to assume that Ramirez had previously been advised by his trial counsel that he would be deported upon his release from prison if the trial court accepted his no contest plea and found him guilty. Such a finding would negate any claim that Ramirez's trial counsel was deficient as to support Ramirez's ineffective assistance of counsel claim raised herein.

{¶ 29} But, rather than relying on speculation and conjecture on our part, we instead defer back to the burden of proof as set forth by Crim.R. 32.1; specifically, that it was Ramirez who had the burden of demonstrating that a manifest injustice had occurred. *See State v. Noe*, 12th Dist. Warren No. CA98-01-011, 1998 Ohio App. LEXIS 4173, *11 (Sept. 8, 1998) ("[t]o prevail under Crim.R. 32.1 on an ineffective assistance of counsel claim, the appellant bears the burden of proof"). Therefore, having no clear indication one way or the other, we agree with the trial court's decision finding Ramirez failed to provide any "evidence that would support a finding of manifest injustice" as required by Crim.R. 32.1. "The credibility and weight of the defendant's assertions in support of a motion to withdraw a plea * * * are matters entrusted to the sound discretion of the trial court." *Romero*, 2019-Ohio-1839 at ¶ 34, citing *State v. Smith*, 49 Ohio St.2d 261, 264 (1977); and *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, ¶ 56. Accordingly, because Ramirez failed to establish that a manifest injustice had occurred, the trial court did not err by denying Ramirez's motion to withdraw his no contest plea.

{¶ 30} In so holding, we note that even if Ramirez had provided evidence indicating his trial counsel was somehow deficient, which he did not, Ramirez failed to establish any resulting prejudice therefrom. Under the second prong of *Strickland*, Ramirez must show prejudice by establishing that "'there [was] a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Romero*, 2019-Ohio-1839 at ¶ 28, quoting *Hill v. Lockart*, 474 U.S. 52, 59, 106 S.Ct. 366 (1985). This, as noted above, requires the court to consider the totality of the circumstances in order to asses "whether it would be rational for a defendant to go to trial instead of pleading guilty [or no contest.]" *Id.*, citing *Lee v. United States*, __U.S.__ , 137 S.Ct. 1958, 1966 (2017). The court's evaluation of prejudice may include any relevant factors. *Id.* at ¶ 34. This includes, but is not limited to, (1) the consequences of going to trial by focusing on the defendant's perspective; (2) the importance that the defendant placed on avoiding deportation; (3) the defendant's connections to the United States; and (4) judicial advisement of immigration consequences. *Id.* at ¶ 29-33.

{¶ 31} In this case, the record plainly establishes that the trial court complied with the statutory requirements set forth in R.C. 2943.031(A) by notifying Ramirez that by entering a no contest plea he "may have the consequences of deportation, exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States." While the trial court's advisement under R.C. 2943.031(A) does not cure an attorney's failure to advise his client of the immigration consequences faced by entering a no contest plea, "a judicial advisement about the immigration consequences of the defendant's plea may weigh against a finding of prejudice[.]" *Romero*, 2019-Ohio-1839 at ¶19, 33. Therefore, although not dispositive of the issue, the fact that the trial court complied with that statute supports the trial court's decision finding Ramirez failed to establish a manifest injustice had occurred. This is particularly true here when considering the extensive, overwhelming, and uncontroverted evidence of Ramirez's guilt. *See, e.g., State v. Scott*, 12th Dist. Preble No. CA2018-10-015, 2019-Ohio-1292, ¶ 40 (trial court did not err by denying appellant's motion to withdraw his guilty plea where the record was "devoid of any evidence that [appellant] was provided with any other than sound advice in light of the

overwhelming evidence against him").

{¶ 32} This holding is further supported by the fact Ramirez waited nearly seven years after he entered his no contest before filing his motion to withdraw. "'An undue delay between the occurrence of the alleged cause for withdrawal of a guilty [or no contest] plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.'" *State v. Worthington*, 12th Dist. Brown No. CA2014-12-022, 2015-Ohio-3173, ¶ 40, quoting *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph three of the syllabus. The fact that Ramirez waited nearly seven years before filing his motion to withdraw clearly militates against granting Ramirez's motion. *See, e.g., State v. Daniels*, 12th Dist. Butler No. CA2018-10-194, 2019-Ohio-2274, ¶ 22 ("appellant waited nearly six years after his conviction to move to withdraw his plea which weighs against granting the motion"); *State v. Robinson*, 12th Dist. Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 19 (appellant waiting four years after his conviction to move to withdraw his plea "clearly militates against" granting appellant's motion to withdraw).

{¶ 33} What this court finds most significant, however, are Ramirez's statements made to the trial court during allocution. This includes Ramirez's statement that he knew society looked at him "as a monster and they have every right to," but that he nevertheless wanted the victim and the victim's family "to sleep at night knowing that I got what I deserved." Ramirez also informed the trial court that he knew he "really hurt" the victim, that he "did something terrible to an innocent lady," and that he did not blame anybody else for what he did. Ramirez further admitted that he "did it," that he could not live with himself, that he was "really stupid," and ashamed of his actions. This was in addition to Ramirez's statements that he was sorry for making such a terrible mistake, that he hated himself, and that he did not know how to live anymore, that he was "guilty," and that he would serve

whatever prison sentence the trial court imposed; "I'm guilty and whatever you give me, I'll do it."

{¶ 34} When considering these statements, it is clear that Ramirez fell on the mercy of the trial court knowing that he faced a maximum 83-year prison sentence that would have almost certainly guaranteed he would spend the rest of his life in prison. Even when focusing on this issue from Ramirez's perspective, the fact that Ramirez would be deported following his release from prison had little, if any, impact on his decision to enter a plea of no contest. This becomes even more apparent when considering the record is devoid of any evidence to indicate Ramirez was surprised when the trial court specifically informed him at the sentencing hearing that he would be deported following his release from prison. Had that been the case, Ramirez could have easily raised the issue with either his trial counsel or the trial court prior to the trial court issuing its sentencing decision. Ramirez, however, did neither.

{¶ 35} Rather than raising the issue with the trial court prior to the trial court issuing its sentencing decision, or with this court on appeal, Ramirez instead waited nearly seven years after he entered his no contest plea before filing his motion to withdraw. For Ramirez to now claim he would have not entered a no contest plea appears disingenuous and falls well short of what could be considered a "manifest injustice" for purposes of satisfying Crim.R. 32.1. Ramirez must do more than present "post hoc assertions" about how he would have pled but for his trial counsel's alleged deficiencies. *Lee*, __U.S.__ , 137 S.Ct. at 1968. To hold otherwise would render what constitutes a "manifest injustice" virtually meaningless. This is because "a defendant without any viable defense 'will rarely be able to show prejudice' from accepting a plea agreement." *Romero*, 2019-Ohio-1839 at ¶ 30, quoting *id* at 1966. Therefore, because Ramirez did not meet his burden of establishing that a manifest injustice had occurred, Ramirez's claim that he received ineffective

assistance of counsel must also fail. This is because Ramirez failed to prove both that his trial counsel was deficient and that he suffered any resulting prejudice therefrom. Accordingly, finding no error in the trial court's decision, Ramirez's two assignments of error lack merit and are overruled.

## Conclusion

{¶ 36} The trial court did not err by denying Ramirez's motion to withdraw his no contest plea upon finding he failed to establish a manifest injustice as required by Crim.R. 32.1. A defendant should be permitted to withdraw his or her plea only in extraordinary cases. *State v. Murray*, 12th Dist. Brown No. CA2015-12-029, 2016-Ohio-4994, ¶ 15. This is not one of those cases. Therefore, finding no error in the trial court's decision, Ramirez's two assignments of error lack merit and are overruled.

{¶ 37} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.