[Cite as *State v. Croom*, 2014-Ohio-2315.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee              :           C.A. CASE NO.    25949

v.                                      :           T.C. NO.    10CR2215

ANTHONY L. CROOM                        :           (Criminal appeal from
                                                   Common Pleas Court)

    Defendant-Appellant             :

                                        :
. . . . . . . . . .

**O P I N I O N**

Rendered on the ____30th____ day of _____May_____, 2014.

. . . . . . . . . .

CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. No. 0012093, 7821 N. Dixie Drive, Dayton, Ohio 45414
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

     **{¶ 1}** This matter is before the Court on the Notice of Appeal of Anthony Croom,

filed October 15, 2013. On February 29, 2012, Croom was convicted, following a trial by jury, of aggravated murder, two counts of murder, and two counts of felonious assault, with multiple firearm specifications. He was sentenced to life without the possibility of parole, plus an additional consecutive three-year term. The trial court ordered Croom to pay restitution in the amount of $7,757.96 to Mary Hurd, the grandmother of the victim, Anthony Hurd, and restitution in the amount of $2,534.00 to Thomas Hurd, the victim's father. On August 2, 2013, this Court affirmed Croom's conviction, but found that the trial court committed plain error in imposing restitution, since there was "no evidence in the record that the trial court considered Croom's present or future ability to pay the restitution; the trial court merely ordered Croom to make restitution." *State v. Croom*, 2d Dist. Montgomery No. 25094, 2013-Ohio-3377, ¶ 95. We note that this Court also determined that "the trial court erred by assessing the costs of extradition against Croom," due to his indigency. *Croom*, ¶ 98. The record reflects that Croom appealed this Court's decision to the Ohio Supreme Court, which declined jurisdiction[1]. Croom herein appeals from the trial court's decision, following a hearing upon remand, to again impose restitution in the amount of $7,757.96 to Mary Hurd and restitution in the amount of $2,534.00 to Thomas Hurd.

{¶ 2} In remanding the matter for the trial court to re-consider the issue of restitution, this Court noted as follows:

> The State argues that Croom can be employed in an institutional work program, and that any funds therefrom can be used to pay the restitution. We conclude that this argument is inconsistent with the requirement of R.C.

---

[1]The record reflects that the Ohio Supreme Court sent a cost bill in the amount of $113.00 to Croom.

2929.19(B)(5); under this argument, because all inmates can work for pay, they should automatically be subject to paying restitution. This would render superfluous the requirement that the trial court determine ability to pay. Therefore, we conclude that the possibility of working while in prison is one factor that a trial court can use in determining an inmate's ability to pay financial sanctions.

In the case before us, we find no evidence in the record that the trial court considered Croom's present or future ability to pay the restitution; the trial court merely ordered Croom to make restitution. Nothing in the record suggests that Croom is anything other than a 43-year old indigent without any assets with which to pay the ordered restitution. The Pre-Sentence Investigation Report, which Croom declined to participate in, does not set forth any assets. Nor does the record indicate the level of Croom's education. While there is evidence in the record that he has worked as a "chef" in the past, there is no indication that he had any training or education in that field. Furthermore, Croom was sentenced to a term of life without parole, making it unlikely that he will be employed in the future. While it is possible that he can be employed while in prison, there is nothing in the record upon which to reach this conclusion. * * *

{¶ 3} The record reflects that counsel was appointed to represent Croom on September 19, 2013, and a hearing was scheduled for September 24, 2013 on the issue of restitution. The State filed "State's Memorandum with Respect to Ability to Pay

Restitution," which is time-stamped September 23, 2013 2:31:05 PM. The State asserted as follows:

* * *

Because inmates are allowed to work in programs and receive compensation for that work, and also because it has been specifically contemplated that restitution could be taken from those wages, there is clearly an ability for a working inmate to make payments towards restitution, even one who will be incarcerated for the rest of his life.

The defendant began his prison sentence on February 24, 2012. Since then, he has consistently worked in the prisons as shown by his institutional summary (Exhibit "A"). Prior to being arrested for the murder of Anthony Hurd, the evidence at trial showed that the defendant had worked as a chef at a Bravo restaurant in Indiana. Prior to that, the evidence at trial showed that this defendant had worked in the Indiana prison system (and this is one of the ways he came into contact with the various inmates to whom he made admissions).

The defendant - whose date of birth is December 29, 1968 - appears to be a healthy 44 year-old man who is able to hold jobs in prison. Even though he has been sentenced to incarceration for the remainder of his life, this should not excuse him from paying restitution. In fact, this sentence will give him plenty of time to contribute to his restitution Order from his wages.

* * *

{¶ 4}    Exhibit A is an Institutional Summary Report, dated September 18, 2013.   It lists the jobs Croom has performed, their departments and locations within the Corrections Reception Center, as well as the start and end dates for each job.   The report reflects that since February 24, 2012, Croom has held the following jobs for varying lengths of time: "Porter," "Veg Prep Room Wkr," "Food Service Worker," and "Reception."   The report reflects that Croom was in "Segregation" three times for a total of 26 days.

{¶ 5}    Croom filed a "Motion to Waive Imposition of Financial Sanctions," which is time-stamped September 23, 2013, 7:10:45 PM.   Attached to the motion is a one page supporting memorandum and Croom's Affidavit of Indigency, which lists no assets or income.   At the restitution hearing, counsel for Croom stated, "It's my understanding that [Croom] gets paid about $17 a month to do this work, and even that right now, he gets none of it because it goes toward the court costs that have been imposed."   Defense counsel then directed the court's attention to *State v. Russell*, 2d Dist. Montgomery No. 23454, 2010-Ohio-4765, upon which he relied in his motion, and the following exchange occurred:

* * *

MR. LACHMAN: * * *

So I believe the mandate of the Second District is very clear given a situation where the Defendant in this case has been sentenced to the rest of his life in prison.   He does not as a matter of law have a present or future ability to pay, and therefore this Court should not order restitution in this matter.

THE COURT: Excuse me one second.   Ms. Auzene, can you get - - on my desk there is the Second District's opinion on this matter.

Mr. Lachman, it would have been real helpful to me if you had given me a courtesy copy of what you filed because I have not read and I don't know exactly what you're talking about. And the fact that you filed it today and didn't give me a copy doesn't give me much assistance in rendering the decision.

I did read the decision of the Second District Court of Appeals and it did - - and my understanding of that was that they ordered me to look at this Defendant's apparent present ability to - - apparent present ability in which to see whether or not - - thank you, but I really don't have time to read it.

MR. LACHMAN: Your Honor, I was just appointed on this matter late last week. I apologize.

THE COURT: Well, and I understand that, but, you know.

MR. LACHMAN: I understand.

THE COURT: But you could have helped me if you - - because you came up here this morning before we took a break. I had time. I could have read this. I could have digested it and I could have not been making a decision off, you know, from the hip at this point, you know. And it just doesn't help me when you cite from something you filed and didn't let me know about.

MR. LACHMAN: Sorry, Your Honor.

THE COURT: I mean that's, you know, I can look through it, but the Second District told me that we needed to review the Defendant's

apparent present ability to earn money. It's my understanding that this Defendant is still at the corrections reception center because of his abilities. And to earn money, he's got various jobs. That's what the State has provided me showing that he's had various jobs and has elected that that's what he wants to do, so he is working. He has the ability to earn money.

A jury has decided that this Defendant did commit the homicide of which I find to be a very intentional and brutal act. And I think that the family is entitled to have some kind of restitution for economic loss.

So based upon the fact that the Defendant has an apparent present ability to earn money, albeit not as much as he might like to, and the fact that he has - - appears to be of sound body and has no exhibiting of any injuries and is able to work, the Court is going to affirm everything in the termination entry, but order that the Defendant must pay complete restitution for economic loss to Mary Hurd, H-U-R-D, in the amount of $7,757.96 and to Thomas A. Hurd for economic loss in the amount of $2,534.00 based on his present and future ability to pay.

MR. LACHMAN: Your Honor, if I may, I just - - can we just - - the record clarify that the document provided by the State does not indicate how much he gets paid?

THE COURT: I'm sorry.

MR. LACHMAN: Can we clarify - - can we just make that the record does reflect - -

THE COURT: Defendant's motion does reflect that amount.[2] The Defendant's - -

MR. LACHMAN: No, no, no. My point is that you talk about that you have a report. It doesn't show what he makes. And I think that is a relevant analysis (sic) just to say he works.

THE COURT: Well, the fact that he works means that he should be able to pay for the wrong that he did. It was an intentional act. He chose to kill someone. He came from Indiana and did this horrible act. And I'm saying he should pay for it. And he's working, so restitution should be ordered.

* * *

{¶ 6}   Croom asserts one assignment of error herein as follows:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY CONCLUDING THAT APPELLANT HAD THE PRESENT OR FUTURE ABILITY TO PAY RESTITUTION HEREIN."

{¶ 7}   We initially note that on February 28, 2014, the State filed a "Motion for Leave to Exceed Page Limitation," and the supporting memorandum thereof provides in part that in "order to respond to all of Appellant's arguments, counsel for the State has not been able to prepare a brief that does not exceed twenty-five pages in length." This Court granted the State's motion. The State's subsequently filed 33 page brief, however, is a copy

---

[2]The trial court indicated that she did not read Croom's motion. Neither it nor the State's motion indicate Croom's earnings.

of the brief the State filed in Croom's direct appeal; it is addressed to the ten initial assignments of error that Croom raised therein. We note that on direct appeal, Croom's tenth assignment of error was addressed in part to the issue of restitution, which resulted in the remand. Thus, we are at a loss as to why the State filed essentially the same brief a second time, addressing primarily assignments of error we had previously overruled, rather than producing a new brief addressing the current solitary assignment of error. We discourage the State from engaging in this practice in the future, since the practical effect herein is that no responsive brief has been filed by the State.

{¶ 8}    R.C. 2929.18(A)(1) permits a trial court to order an offender to pay restitution to a victim's survivors to compensate for the victim's economic loss. R.C. 5145.16(A) provides: "The department of rehabilitation and correction shall establish work programs in some form for as many prisoners as possible who are in the custody of the department * * * ." R.C. 5145.16(C) provides that the department of rehabilitation and correction "* * * in establishing and administering the work programs * * *" may "(8) Allocate the earnings of the prisoners" with "(b) Up to twenty-five percent of the earnings to be distributed * * * (i) To the victims of the prisoner's offenses for restitution." Ohio Adm Code 5120-3-01(B) provides that "Inmate labor opportunities and job assignments fall within the following categories: (1) 'Inmate labor assignment' * * *(2) 'Private employment' * * * (3) 'OPI assignments' * * * (4) 'Work program assignments' * * * ." Ohio Adm. Code 5120-3-01 contemplates full-time, part time, and temporary assignments. Ohio Adm. Code 5120-3-08 governs inmate compensation for work program assignments and related matters, and it identifies seven inmate categories, each with a corresponding

compensation rate. The rates range from zero to $24.00 dollars a month.

{¶ 9} As he did below, Croom asserts that the matter herein is analogous to *Russell*. Therein, this Court concluded that the trial court erred in ordering restitution of more than $15,000.00 without considering Russell's ability to pay it. This Court noted:

* * * Under R.C. 2929.19(B)(6), a trial court must consider an offender's present and future ability to pay before imposing a financial sanction such as restitution. "The trial court does not need to hold a hearing on the issue of financial sanctions, and there are no express factors that the court must take into consideration or make on the record." *State v. Culver*, 160 Ohio App.3d 172, 826 N.E.2d 367, 2005-Ohio-1359, ¶ 57. A trial court need not even state that it considered an offender's ability to pay. *State v. Parker*, Champaign App. No. 03CA0017, 2004-Ohio-1313, ¶ 42. However, the record should contain some evidence that the trial court considered the offender's ability to pay. In *Parker*, we upheld financial sanctions where the record included documentation of a defendant's financial affairs, including a presentence investigation report, and the record demonstrated that the trial court had considered the report for sentencing purposes.

* * * With regard to Russell's present ability to pay, the record contains no testimony about his having any significant assets. He was living in an apartment at the time of the instant offenses, and he was working as a barber in California at the time of his arrest. He filed an affidavit of indigency in the proceedings below, and he was represented by the Ohio Public

Defender's office. Although a presentence investigation report was filed in this case, it contains no additional information about Russell's financial affairs. Therefore, nothing in the record supports an inference[3] that the trial court considered his present ability to pay restitution of more than $15,000.

With regard to Russell's future ability to pay, trial testimony established that he once operated his own barber shop. Moreover, the record reflects that the trial court considered the presentence investigation report at sentencing. The report indicated that Russell was twenty-nine years old at the time of the instant offenses. It further indicated that he was a licensed barber. The report also revealed that Russell had obtained a GED and had completed one and one-half years of college. Finally, the report characterized him as being in good physical and mental health. While these facts suggest that Russell might be employable, we note that he received a sentence of forty and one-half years to life in prison. As a result, Russell will be approximately seventy years old, at least, if he ever has the good fortune to be released from prison. In light of this fact, we cannot infer that the trial court considered Russell's future ability to pay when it ordered restitution of more than $15,000. Cf. *State v. Napper*, Ross App. No. 06CA2885, 2006-Ohio-6614, ¶ 16 (reversing a restitution order where it was

---

[3]"Where the trial court fails to make an explicit finding on a defendant's relative ability to pay, this court has observed that a trial court's consideration of this issue may be 'inferred from the record under appropriate circumstances.' * * *." *State v. Rose*, 2d Dist. Montgomery No. 24196, 2011-Ohio-3616, ¶ 11.

unclear how a defendant with no assets and a prison sentence of fifty-one years to life would have the ability to pay). * * * *Russell*, ¶ 62-64.

{¶ 10} In *State v. Garrett,* 2d Dist. Montgomery No. 25426, 2013-Ohio-3035, this Court reversed and vacated a restitution order where Garrett received a 16 year sentence, to be served concurrently to an aggregate term of 30 years to life that was imposed in another matter. The restitution ordered was in the amount of $1,274.00, and the trial court acknowledged at sentencing that "'it's a lot of speculation' regarding Garrett's future ability to pay." *Id*., ¶ 9. This Court reasoned as follows: "While the State asserts that 'Garrett will have the opportunity to earn wages for work while in the institution, and approved sources may deposit funds into his account,' from which restitution may be paid, this argument is highly speculative and ignores the statutory mandate in R.C. 2929.19(B)(5) that the trial court determine ability to pay." *Id.*

{¶ 11} This Court herein remanded this matter to the trial court to reconsider the issue of restitution, namely Croom's present and future ability to pay it. The transcript reflects that the trial court considered Exhibit A in imposing restitution, and its judgment entry of conviction provides that it considered the presentence investigation report. Exhibit A reflects that Croom had multiple work program assignments. It does not, however, set forth the amount of compensation that Croom received or his inmate category, nor does it indicate whether his jobs were full time or part time. Croom was not receiving pay while in segregation. Defense counsel indicated his "understanding that [Croom] gets paid about $17 a month to do this work, and even that right now, he gets none of it because it goes toward the court costs that have been imposed."

**{¶ 12}** The presentence investigation report provides, "[i]n light of Mr. Croom's unwillingness to participate in the PSI interview, a PSI report could not be completed." The report provides that Croom's adult felony record includes an eight year sentence in 1987 for forgery and burglary; a 160 month sentence in 1994 for possession of a firearm by a felon, and that his subsequent supervised release was revoked due to a parole violation, resulting in an 18 month sentence; and that he was sentenced to a six year term in 2007 for possession of a firearm by a serious violent felon. The report contains no information about Croom's level of education, assets, employment history, work experience, or physical and mental health. In other words, nothing in the report suggests that Croom has a present and future ability to pay restitution.

**{¶ 13}** We additionally note that the trial court's decision seems to be based at least in part on the nature of Croom's offense and the Hurds' economic loss, and not Croom's ability to pay; the trial court found the homicide "to be a very intentional and brutal act," and noted that "the family is entitled to have some kind of restitution for economic loss." The court further again stressed that the offense "was an intentional act. He chose to kill someone. He came from Indiana and did this horrible act. And I'm saying he should pay for it." Croom's mens rea, the Hurds' economic loss, and the fact that Croom traveled from another jurisdiction to commit his offense here have no bearing on Croom's present and future ability to pay restitution in the amount of $10, 291.96. Most significantly, in the course of chastising defense counsel regarding his purported failure to timely provide her with a "courtesy copy" of his motion, the trial court indicated that she did not "have time to read" the short motion, that she did not know what defense counsel was talking about when

he discussed *Russell*, and that accordingly, she was making her decision "from the hip at this point."

{¶ 14} Finally, we conclude that our decision herein is not inconsistent with this Court's decision in *State v. Fischer*, 2d Dist. Montgomery No. 25618, 2013-Ohio-4817. Therein, this Court affirmed an order of restitution in the amount of $6,025.18, imposed upon a defendant serving a sentence of fifty years. There was no suggestion in *Fischer*, as here, that the trial court's decision imposing restitution was based upon factors that bore no relation to his present and future ability to pay, nor that the trial court admittedly and arbitrarily rendered judgment "from the hip." As noted by the Fourth District, "courts have no discretion to apply an improper analysis or process in deciding an issue even where they may have discretion in the ultimate decision of the merits." *State v. Haney*, 180 Ohio App.3d 554, 2009-Ohio-149, 906 N.E.2d 472 (4th Dist.). An "[a]buse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeons, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990); *Feldmiller v. Feldmiller,* 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 7. It seems incongruous to find that appellant could afford to make restitution in the amount of $10,291.96 but is indigent and unable to pay court costs. We note no court costs were assessed. No indication appears in the record that appellant has an independent external means of support. As in *Garrett*, Croom faces a life sentence with no probability of release, and we note that the amount of restitution imposed on Croom is much greater than that

imposed upon Garrett. For the foregoing reasons, we conclude that the trial court's decision is not supported by a sound reasoning process, and that the court accordingly abused its discretion in imposing restitution.

{¶ 15} Croom's assigned error is sustained, and the court's restitution order is reversed and vacated. The matter is remanded to the trial court for the sole purpose for the trial court to enter an order vacating restitution.

. . . . . . . . . .

FAIN, J., concurs.

HALL, J., concurring in judgment by separate opinion:

{¶ 16} In this case, on this record, I concur in judgment.

{¶ 17} Nevertheless, I suggest that the result here should not be considered as a signal that an offender serving a very long prison term will inevitably be absolved from having to pay restitution to the victim of his or her offense. Prisoners can work, even though their compensation is very modest. Furthermore, the amount they may be required to pay toward restitution is already limited by Ohio Administrative Code Section 5120-3-09(A)(2) which provides that: "Up to twenty-five per cent of the net earnings may be used for restitution of the victim(s) of the inmate's offense(s), if the inmate voluntarily requests or is under court order to make restitution." Therefore, just because an offender is serving a very long prison sentence does not automatically result in an exclusion from the obligation to pay restitution.

. . . . . . . . . .

Copies mailed to:

Carley J. Ingram
J. Allen Wilmes
Hon. Frances E. McGee