[Cite as *State v. Toshniyazov*, 2026-Ohio-1904.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-08-022 |
| vs. | : | OPINION AND JUDGMENT ENTRY 5/26/2026 |
| BAKHODIR TOSHNIYAZOV, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20240204

Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

McKinney & Namei Co., L.P.A., and Firooz T. Namei and Patrick D. Tilden, for appellant.

## **O P I N I O N**

**HENDRICKSON, P.J.**

{¶ 1}   Appellant, Bakhodir Toshniyazov, appeals from a decision of the Fayette County Court of Common Pleas denying his presentence motion to withdraw his no contest plea. Because the trial court failed to apply the proper test in its analysis of appellant's motion, we reverse the trial court's decision and remand the matter for

application of the two-prong test for ineffective assistance of counsel recognized in *Strickland v. Washington*, 466 U.S. 668 (1984).

## I. FACTS & PROCEDURAL HISTORY

{¶ 2}  Appellant, a native of Uzbekistan, has been a lawful permanent resident of the United States since 2019. He and his wife, a noncitizen, have three young children who were born in the United States. At the time of the relevant trial court proceedings, the oldest child was four years old and the youngest child was less than a year old. Appellant was working with family members to try to open a restaurant in Mason, Ohio.

{¶ 3}  On November 8, 2024, appellant was indicted by the Fayette County Grand Jury on one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree, and five counts of vehicular assault in violation of R.C. 2903.08(A)(2)(b), felonies of the fourth degree. The charges arose following a motor vehicle collision that occurred on May 22, 2024 on I-71 in Fayette County, Ohio. Appellant was alleged to have been operating his motor vehicle recklessly and at extremely high rates of speed, at one point traveling in excess of 150 m.p.h. Appellant struck another vehicle, causing that vehicle to lose control, go into the median, flip over and enter another lane of travel, where it collided with a third vehicle. One individual was killed and five other individuals suffered serious injuries.

{¶ 4}  Following his arrest on the charges, appellant was jailed. With the help of his family, appellant retained attorney Mark Wieczorek to represent him. Appellant, whose native language is Uzbek, relied on family members or a court-interpreter to communicate with Wieczorek. On or about March 23, 2025, Wieczorek and one of appellant's family members went to the jail to speak with appellant. Wieczorek and appellant did not speak face-to-face at that time but rather spoke through "a television apparatus" with appellant's family member acting as an interpreter.

- 2 -

{¶ 5}    A final pretrial hearing was scheduled for April 14, 2025. Prior to the pretrial hearing commencing, appellant and Wieczorek met face-to-face for approximately 45 to 60 minutes. A court interpreter was present for their meeting. When the pretrial hearing commenced, appellant, through counsel and the court interpreter, indicated a desire to enter a no contest plea to the charges set forth in the indictment. Before accepting appellant's no contest plea, the trial court conducted a Crim.R. 11(C) plea colloquy and advised appellant, as required by R.C. 2943.031(A), of the possible immigration consequences of entering a no contest plea. The court advised as follows:

> [THE COURT]: [I]f you are not a citizen of the United States you are hereby advised that conviction of the offenses to which you are pleading guilty or no contest, may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States. Do you understand that?
>
> (Interpreting)
>
> [APPELLANT]: Yes, Sir.

{¶ 6}    The trial court also questioned appellant about his ability to consult with his counsel.

> THE COURT:  Have you had enough time to discuss this [plea] with your attorney?
>
> (Interpreting)
>
> [APPELLANT]:  Yes.
>
> [INTERPRETER]: Yes.
>
> [THE COURT]: And has he answered all of your questions?
>
> (Interpreting)
>
> [APPELLANT]: Uh-huh.
>
> [INTERPRETER]: Yes.

[THE COURT]: And has he done everything you've asked him to do up to this point?

(Interpreting)

[INTERPRETER]: Yes.

At no point in time during the plea proceedings did appellant ask any immigration-related questions. The trial court accepted appellant's no contest plea to the charges, found him guilty, ordered that a presentence-investigative report be prepared, and scheduled sentencing for June 9, 2025.

{¶ 7} On April 28, 2025, appellant, acting pro se, filed a motion to withdraw his no contest plea. The State moved to strike appellant's motion, and on May 1, 2025, the trial court granted the State's motion. The court found that appellant was "represented by counsel and counsel did not file the request to withdraw [the no contest] plea. . . As the [appellant] is not entitled to hybrid representation, the [motion] filed pro se by the [appellant] on April 28, 2025 shall be stricken from the record." Wieczorek moved to withdraw as appellant's counsel on May 1, 2025, referencing appellant's pro se motion to withdraw the no contest plea and a breakdown in communication. On May 7, 2025, the trial court granted Wieczorek's request to withdraw as counsel.

{¶ 8} On May 15, 2025, Firooz T. Namei entered an appearance as counsel for appellant. On June 4, 2025, Namei filed a motion to withdraw appellant's no contest plea, asserting that appellant received ineffective assistance of counsel in entering the plea because Wieczorek failed to advise appellant that the offenses to which he was pleading were considered crimes of moral turpitude and/or aggravated felonies requiring mandatory deportation pursuant to 8 U.S.C. 1227(a)(2)(A)(i) or (iii). In support of the motion, appellant attached his own affidavit, copies of his and his wife's social security cards, birth certificates for his three children, and paperwork from Wieczorek's firm

- 4 -

regarding Wieczorek's representation of him. In his affidavit, appellant indicated that Wieczorek spoke with him in court on April 14, 2025 "only for a few minutes." Appellant further averred:

> 16. I asked the lawyer if this paper will get me deported.
>
> 17. My lawyer told me he did not know.
>
> 18. I insisted that I have three U.S. citizen children and I am the only one working to support them.
>
> 19. I told my lawyer that I will not plead guilty if it means I will be deported.
>
> . . .
>
> 24. Again, when I asked Mr. Wieczorek about my immigration, he said he did not know anything about immigration, that I should talk to an immigration lawyer.
>
> 25. After the [plea] hearing, I waited for my lawyer to talk to me, but he never did.
>
> . . .
>
> 26. If I had known that I would be deported, I would not have signed the waiver and plea agreement.

{¶ 9} A few weeks later, on June 27, 2025, appellant filed a supplement to his original affidavit and filed the affidavit of the court interpreter who assisted with the plea proceedings. In his supplemental affidavit, appellant averred that when he met with Wieczorek on April 14, 2025 prior to the proceedings, he "specifically asked Mr. Wieczorek if [he] would be deported if [he] signed the plea agreement" and Wieczorek responded, "I don't know anything about immigration laws, talk to an immigration lawyer." Appellant further averred that "[t]he only thing I understood on April 14, 2025 was that I was not admitting anything" and "since I was not admitting to anything, I could not be deported."

{¶ 10} In his affidavit, the interpreter attested that he is fluent in both the English and Uzbek languages and that he served as the interpreter at appellant's plea hearing on April 14, 2025. He further averred as follows:

> 8. Before [appellant] pled no contest to the indictment, his attorney, Mr. Wieczorek, and I met privately with him to discuss the case.
>
> 9. At that meeting, I recall [appellant] asked about the impact of the plea of no contest on his immigration status; [appellant] also wanted his lawyer to reduce the bond.
>
> 10. Mr. Wieczorek told him, and I interpreted, that he was not an immigration attorney, that he did not know about immigration law, and that [appellant] should consult an immigration lawyer.
>
> 11. To the best of my recollection, Mr. Wieczorek did not tell [appellant], and therefore I did not translate to him, that his plea of no contest to the indictment and the Court's finding of guilty would result in mandatory removal.

{¶ 11} An evidentiary hearing on appellant's motion to withdraw his no contest plea was held on July 18, 2025. Yokub Jabborov, one of appellant's friends, Wieczorek, and appellant all testified. Notably, the interpreter was not called as a witness, and appellant did not move to admit the interpreter's affidavit into evidence. The only exhibits admitted into evidence were appellant's pro se motion to withdraw his plea and text messages exchanged between Wieczorek and Jabborov.

{¶ 12} Testimony from the hearing revealed that Jabborov helped contact and retain attorney Wieczorek to represent appellant. Jabborov, who spoke English and Uzbek, helped with translation for appellant's family when they spoke with Wieczorek. Jabborov met with Wieczorek on one occasion and texted with Wieczorek about his efforts to reduce appellant's bond. Jabborov was not present for any jail or court meetings Wieczorek had with appellant. According to Jobborov, appellant could speak and write some English, but "not very well."

{¶ 13} Wieczorek testified he was retained as appellant's attorney in late March 2025. He first met appellant at the jail where appellant was housed. One of appellant's family members accompanied him to act as a translator. Wieczorek spoke with appellant through a "television apparatus." Wieczorek's first face-to-face meeting with appellant occurred the morning of April 14, 2025. The court interpreter was present for the meeting. The meeting lasted approximately 45 to 60 minutes.

{¶ 14} Wieczorek testified that prior to the April 14, 2025 meeting with appellant, he had obtained and personally reviewed discovery files received from the State, which included 31 video files, photographs of the accident, police reports, crash reports, and forensic data extrapolated from appellant's vehicle's computer system. Wieczorek offered to review the discovery with appellant, but appellant declined. Wieczorek testified, "I explained to [appellant] that based on my interpretation of the evidence, I didn't think that we had a valid defense to, to the indictment, and then I asked him if he wanted to dispute any of the evidence." According to Wieczorek, appellant answered "no" and specifically indicated that he did not want to dispute that he had been driving over 150 m.p.h. prior to the crash.

{¶ 15} Wieczorek testified he then advised appellant of the statutory penalties appellant faced if convicted of the charged offenses. Wieczorek explained the difference between a no contest plea and a guilty plea to appellant, advising appellant that a no contest plea could not be used as an admission in civil litigation commenced against him as a result of the accident. Wieczorek further advised appellant that the State had offered a plea deal with an agreed sentence in consideration of appellant pleading guilty, but the State was unwilling to extend such an offer in consideration of a no contest plea.

{¶ 16} Regarding the immigration consequences of pleading to the charges, Wieczorek testified as follows:

[WIECZOREK]: I told him that a no contest plea and a conviction, if the Court had found him guilty would be subject to mandatory deportation.

[PROSECUTOR]: Okay, so, you did advise him that he was subject to deportation as a result of a conviction in this case?

[WIECZOREK]: Yes.

[PROSECUTOR]: Okay, what happened next?

[WIECZOREK]: The interpreter told me that my client asked if there would be anyway that he'd be able to remain here, which I meant, which I took to mean in the United States.

[PROSECUTOR]: Okay, and what did you say next?

[WIECZOREK]: I told him I was not an immigration attorney. I. . . I don't know.

[PROSECUTOR]: Okay. So, when you told him you don't know, you're not an immigration attorney, but you had already told him he would face mandatory deportation, can you explain to us what you meant. How…how do you reconcile those statements?

[WIECZOREK]: Sure, well I told him that he was subject to mandatory deportation. I didn't know if there was anyway that an immigration attorney, if there's any kind of exceptions where he would be able to, to stay in the United States.

[PROSECUTOR]: Okay. So, to the extent of . . . of hiring an immigration lawyer, you telling it, you telling him that he needed to hire an immigration lawyer, that was to look to see if there was any, any way he could stay in, is that correct?

[WIECZOREK]: Correct.

[PROSECUTOR]: But you told him that if he enters this plea he is going to be deported.

[WIECZOREK]: I didn't tell him that he was going to be deported, I said that he was subject to mandatory deportation.

After advising appellant he would be subject to mandatory deportation, Wieczorek asked appellant if he still wanted to move forward with a no contest plea, and appellant shook his head yes.

- 8 -

{¶ 17} Appellant denied that Wieczorek had informed him that deportation was mandatory should he be found guilty of the charged offenses. Appellant stated that when he asked Wieczorek about the immigration consequences of his plea, Wieczorek replied, "I don't know, ask [an] immigration attorney, I don't know anything about deportation." Appellant claimed that the first time he found out he was subject to mandatory deportation was when he appeared before the judge. Appellant testified, "It was only in front of the Judge, I was told that there's jail time, deportation, fines, and that was in front of the Judge. I was never told about this before."

{¶ 18} Appellant testified that he would not have pled no contest had he known deportation was mandatory. He indicated that his deportation would devastate his family as "everything"—his family, his kids, his work, his business—was in the United States. He then testified that he would have been willing to "potentially risk higher jail time if it gave [him] a chance to stay in this country."

{¶ 19} Appellant was questioned about the accident and whether he had admitted to Wieczorek that he had been driving upwards of 150 m.p.h. Appellant stated, "I said I didn't know my speed at that time, and I never gave a clear number to anybody. I said maybe yes, I was going faster, but I didn't tell him that." On cross-examination by the State, appellant indicated that he thought he might be able to "win at trial" if he were "asked about the accident, how it occurred." He indicated that "the victim suddenly changed the line [sic], I was in the fast lane traveling in the fast lane and the other driver suddenly changed line [sic] and (unintelligible) my line [sic]."

{¶ 20} Following the presentation of evidence, the trial court heard argument on the merits of the motion. Appellant's counsel maintained that withdrawal of the plea was warranted under the United States Supreme Court's precedent in *Strickland v. Washington*, 466 U.S. 668 (1984) and *Padilla v. Kentucky*, 559 U.S. 356 (2010) due to

Wieczorek's ineffective representation in failing to advise appellant that deportation was mandatory. In opposing appellant's motion, the State argued the test for ineffective assistance of counsel set forth in *Strickland* did not apply. ("The State believes that this is not a *Strickland v. Washington* test" and "[w]ith respect to the standard again, the State would argue that this is not a *Strickland* standard at this stage of the proceedings.") The State contended the court should analyze the merits of appellant's motion under the standard governing a presentence motion to withdraw a plea made under Crim.R. 32.1, as set forth in *State v. Xie*, 62 Ohio St.3d 521 (1992), and by considering the nine factors identified in *State v. McWhorter*, 2024-Ohio-5753, ¶ 12 (12th Dist.).[1]

{¶ 21} The trial court denied the motion, walking through the factors identified in *McWhorter* on the record. The court stated:

> [1] I find that the [appellant] was represented by a highly competent counsel. [Wieczorek] expressed his eighteen years' experience, and jury trial experience. [2] [Appellant] was afforded a complete Criminal Rule 11 hearing before entering his plea of no contest [3] I believe I fully and impartially conducted this hearing on the Motion to Withdraw. [4] I believe I've given the full and fair consideration to the Motion. [5] I believe the Motion was made in a reasonable time. Initially, pro se it was done fourteen days afterwards. Although, the technical Motion that was filed, that was accepted by the Court was filed on June 4th, which was well

---

1. In *State v. McWhorter*, 2024-Ohio-5753 (12th Dist.), this court recognized that "'[i]n determining whether to grant a presentence motion to withdraw a guilty [or no contest] plea, the trial court should consider the circumstances surrounding the defendant's plea.'" *Id.* at ¶ 12, quoting *State v. Harris*, 2019-Ohio-1700, ¶ 11 (12th Dist.). We identified the following nine factors to be considered:

> (1) whether the defendant was represented by highly competent counsel; (2) whether the defendant was afforded a complete Crim.R. 11 hearing before entering the plea; (3) whether the trial court conducted a full and impartial hearing on the defendant's motion to withdraw the plea; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion set out specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was possibly not guilty of the charges or had a complete defense to the charges; and (9) whether the [S]tate would have been prejudiced by the withdrawal.

*Id.*, citing *State v. Owens*, 2022-Ohio-160, ¶ 30 (12th Dist.).

after fourteen days but still under the same cloud of that initial pro se filing. [6] I would state that the initial pro se filing did not really set forth specific reasons for the withdraw other than he didn't understand what was being communicated to him. The follow-up Motion on June 4th stressed Constitutional Rights and lack of instruction on deportation which were the reasons set forth basically. [7] I believe the Court clearly expressed the nature of the charges and the possible penalties involved at the plea hearing. [8] I find the [appellant] was not possibly not guilty of the charges or had a complete Defense to the charges. Nothing has really been presented evidence wise, that would support a defense or a complete defense to the charge. [9] In considering the issue of whether the State would be prejudice[d] by the withdraw, the State would not be highly prejudice[d] by a withdraw, obviously would have to prepare for trial, would have to go through relining up witnesses and things of that nature which they didn't really go through the first time. I'm going to . . . deny the Motion to Withdraw the Plea of No Contest.

{¶ 22} After denying appellant's motion to withdraw his no contest plea, the court proceeded to sentence appellant to an aggregate 12.5 year sentence, comprised of 60 months for aggravated vehicular homicide and 18 months on each of the five counts of vehicular assault, all run consecutively. A few days later, on July 22, 2025, the trial court journalized its judgment entry denying appellant's motion to withdraw his no contest plea and the judgment entry of conviction and sentence.

## II. APPEAL

{¶ 23} Appellant timely appealed, raising three assignments of error relating to the trial court's denial of his motion to withdraw his no contest plea. We find resolution of his first assignment of error dispositive of the appeal.

{¶ 24} Assignment of Error No. 1:

{¶ 25} THE COURT BELOW ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY FAILING TO CONSIDER APPELLANT'S MOTION UNDER THE STANDARD ESTABLISHED BY *STRICKLAND*.

{¶ 26} In his first assignment of error, appellant argues that his no contest plea should be vacated due to ineffective assistance of counsel based upon Wieczorek's failure to advise him of the immigration consequences of pleading no contest to the offenses. Appellant argues that such a claim required the trial court to conduct an analysis pursuant to the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668. Relying on the Ohio Supreme Court's decision in *State v. Romero*, 2019-Ohio-1839, appellant argues the trial court's failure to apply *Strickland* resulted in reversible error.

## A. Standard of Review – Motion to Withdraw a Plea

{¶ 27} Pursuant to Crim.R. 32.1, a defendant may file a presentence motion to withdraw a guilty plea. *State v. Valdez*, 2024-Ohio-3357, ¶ 23 (12th Dist.). Although a defendant's presentence motion to withdraw a guilty plea "should be freely and liberally granted," that does not mean that a defendant possesses an absolute right to withdraw a guilty plea prior to sentencing. *Id.*; *State v. Barnes*, 2022-Ohio-4486, ¶ 21-22. "Rather, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Newton*, 2015-Ohio-2319, ¶ 10 (12th Dist.), citing *State v. Witherspoon*, 2010-Ohio-4569, ¶ 8 (12th Dist.).

{¶ 28} The decision to grant or deny a motion to withdraw a guilty or no contest plea rests within the trial court's sound discretion. *State v. Ramirez*, 2019-Ohio-3050, ¶ 19 (12th Dist.). An appellate court reviews a trial court's denial of a motion to withdraw a plea under an abuse-of-discretion standard of review. *Id.* An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Id.* "A decision is unreasonable when it is unsupported by a sound reasoning process." *State v. Cast*, 2022-Ohio-3967, ¶ 7 (12th Dist.).

**B. Ineffective Assistance of Counsel Claims**

{¶ 29} "The Sixth Amendment [to the United States Constitution] guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding' including when he enters a guilty [or no contest] plea." *Lee v. United States*, 582 U.S. 357, 363 (2017), quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). *See also Romero*, 2019-Ohio-1839, at ¶ 14. "When a defendant alleges ineffective assistance of counsel arising from the plea process, the defendant must meet the two-prong test set out in *Strickland*, 466 U.S. 668." *Id.* Pursuant to this test, the defendant must show that "counsel's performance was deficient." *Id.* at ¶ 15, citing *Strickland* at 687. In the context of an attorney who represents a noncitizen client who is considering a plea, "the United States Supreme Court has held that 'counsel must inform her client whether his plea carries a risk of deportation.'" *Id.*, quoting *Padilla v. Kentucky*, 559 U.S. at 374. "Given the grave consequences of deportation, an ineffective-assistance claim is not limited to affirmative misadvice or false information. . . . The failure to give any advice at all about possible deportation consequences satisfies the first prong of *Strickland*." *Id.*, citing *Padilla* at 369-371. "The severity of deportation . . . only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Padilla* at 373-374.

{¶ 30} Under the second prong of *Strickland*, the defendant must demonstrate prejudice resulting from counsel's deficient performance. *Strickland* at 687; *Romero* at ¶ 16. "[A] defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty [or no contest] and would have insisted on going to trial.'" *Id.*, quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## C. Ohio Supreme Court's *Romero* Decision

{¶ 31} In 2019, the Ohio Supreme Court issued an opinion discussing and clarifying "the standard for ruling on a criminal defendant's motion to withdraw a . . . plea when the motion is based on a claim of ineffective assistance of counsel arising from an attorney's alleged failure to advise his noncitizen client of the immigration consequences of entering the plea." *Romero*, 2019-Ohio-1839, at ¶ 1. In that case, the defendant filed a postsentence motion to withdraw his guilty plea to felony drug charges after removal proceedings were instigated in federal immigration court. *Id.* at ¶ 5 and 9-10. The defendant sought to withdraw his plea on the basis that he received ineffective assistance of counsel as his attorney had failed to advise him of the immigration consequences of pleading guilty. *Id.* at ¶ 10. The trial court denied the defendant's motion, finding that the defendant entered his plea knowingly, voluntarily, and intelligently after being read the advisement set forth in R.C. 2943.031(A) by the trial court. *Id.* at ¶ 10. On appeal, the Fifth District Court of Appeals reversed, finding that the trial court erred by not analyzing the defendant's motion under the two-prong analysis identified in *Strickland*. *Id.* at ¶ 11. The Ohio Supreme Court affirmed the Fifth District's decision, finding that the trial court abused its discretion by analyzing the issue based upon its compliance with R.C. 2943.031(A) and Crim.R. 11 instead of the two-prong test identified in *Strickland*. *Id.* at ¶ 21.

{¶ 32} In doing so, the Supreme Court focused on the source of the rights being implicated by the defendant's ineffective assistance of counsel claim. The Court stated, in relevant part, as follows:

> As the United States Supreme Court has explained, an inquiry into whether a defendant entered his plea knowingly and voluntarily "is not the correct means by which to address a claim of ineffective assistance of counsel." *Lafler* [*v. Cooper*], 566 U.S. [156] at 173. A court's duty to ensure that

pleas are entered knowingly and voluntarily arises from the constitutional guarantee of due process. *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012). By contrast, counsel's duty to provide competent advice during plea proceedings arises from a separate constitutional guarantee—the Sixth Amendment right to counsel. *Missouri v. Frye*, 566 U.S. 134, 141 (2012). A knowing and voluntary plea therefore does not supersede defense counsel's errors. *Id.* "It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy." *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014). When, as here, the defendant asserts a claim of ineffective assistance of *counsel*, the court must focus on *counsel's* deficient performance and the prejudice arising from that deficiency.

(Cleaned up and emphasis in original.) *Romero* at ¶ 18. The "generalized warning" provided by the trial court under R.C. 2943.031(A) "does not replace counsel's duty to advise his client of the consequences of his . . . plea." *Id.* at ¶ 20.

{¶ 33} The Ohio Supreme Court remanded the matter to the trial court for application of the proper standard—the *Strickland* standard. *Id.* at ¶ 35. In doing so, the Court reiterated the principles identified by the United States Supreme Court in *Padilla*. Under the first prong of *Strickland*, the deficient-performance prong, "'[w]hen the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear.'" *Id.* at ¶ 23, quoting *Padilla,* 559 U.S. at 369. However, in situations where the deportation consequences are not clear, counsel "'need do no more than advise a noncitizen client that pending criminal charges carry a risk of adverse immigration consequences.'" *Id.* at ¶ 26, quoting *Padilla* at 369.

{¶ 34} Under the second prong of *Strickland*, the prejudice prong, the defendant must show that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty [or no contest] and would have insisted on going to trial.'" *Id.* at ¶ 28, quoting *Hill v. Lockhart*, 474 U.S. at 59. The defendant must do more than present

"*post hoc* assertions . . . about how he would have pleaded but for his attorney's deficiencies.' . . . The trial court should look to contemporaneous evidence that substantiates [the defendant's] statements." (Emphasis in original.) *Id.*, quoting *Lee*, 582 U.S. at 369. To assess whether it would be rational for a defendant to go to trial instead of entering a plea, the court should consider the totality of the circumstances. *Id.* at ¶ 29. This includes, but is not limited to, considering (1) the consequences of going to trial by focusing on the defendant's perspective; (2) the importance that the defendant placed on avoiding deportation; (3) the defendant's connections to the United States; and (4) the judicial advisement of immigration consequences. *Id.* at ¶ 29-33. *See also State v. Ramirez*, 2019-Ohio-3050, at ¶ 30 (12th Dist.).

## D. Analysis

{¶ 35} In the present case, the trial court failed to apply the two-prong *Strickland* test to appellant's claim of ineffective assistance of counsel. The court, perhaps led astray by the State's repeated representations that "this is not a *Strickland v. Washington* test" and "this is not a *Strickland* standard at this stage of the proceedings," did not engage in the type of analysis required under *Padilla* or *Romero*. Instead, at the conclusion of the hearing on appellant's motion to withdraw his no contest plea, the trial court focused only upon the nine factors recognized in *McWhorter*, 2024-Ohio-5753, at ¶ 12 (12th Dist.), that govern consideration of a presentence motion for withdrawal of a plea. In the trial court's judgment entry denying appellant's motion to withdraw his plea, the court again focused on several of the *McWhorter* factors. The court neither mentioned ineffective assistance of counsel or the *Strickland* prongs in its oral pronouncement denying the motion to withdraw the no contest plea nor in its judgment entry denying the motion. It is clear from the record that the court failed to analyze appellant's motion pursuant to the *Strickland* test, as required under *Padilla* and *Romero.*

- 16 -

{¶ 36} Despite this, the State urges us to uphold the trial court's denial of appellant's motion to withdraw his no contest plea, contending that certain factual findings made by the trial court support a conclusion under *Strickland's* first prong that Wieczorek did not provide deficient representation. While certain findings, especially those pertaining to Wieczorek's advisements of deportation consequences, are relevant to an analysis under *Strickland*, as a reviewing court operating under an abuse-of-discretion standard of review rather than under a de-novo standard of review, we are not the proper court to conduct the *Strickland* analysis in the first instance. Rather, the *Strickland* analysis should be conducted in the first instance by the trial court. *See, e.g., State v. Powell*, 2014-Ohio-5787, ¶ 15 (9th Dist.) (finding that where a trial court applied the incorrect allied-offense analysis, the proper remedy was to "remand this matter to the trial court to make the initial determination" of whether the defendant's offenses were allied offenses under the correct allied-offenses test); *State v. Johnson*, 2013-Ohio-353, ¶ 20 (10th Dist.) (same).

{¶ 37} Trial courts "have no discretion to apply an improper analysis or process in deciding an issue even where they may have discretion in the ultimate decision on the merits." *State v. Croom*, 2014-Ohio-2315, ¶ 14 (2d Dist.). As the trial court's denial of appellant's motion to withdraw his no contest plea was unsupported by a sound reasoning process, we conclude that the trial court abused its discretion. Appellant's first assignment of error is sustained.

**E. Remaining Assignments of Error Rendered Moot**

{¶ 38} Assignment of Error No. 2:

{¶ 39} THE COURT BELOW ERRED BY DENYING APPELLANT'S MOTION AND HOLDING HIS PRIOR COUNSEL INFORMED HIM OF MANDATORY DEPORTATION CONSEQUENCES.

{¶ 40} Assignment of Error No. 3:

{¶ 41} THE TRIAL COURT ERRED BY FAILING TO MAKE ANY FINDINGS OF FACT REGARDING THE CREDIBILITY OF THE ACCOUNTS THAT CONTRADICTED THAT OF APPELLANT'S PRIOR COUNSEL.

{¶ 42} Appellant's remaining assignments of error are also directed at challenging the denial of his motion to withdraw his no contest plea. Given our resolution of his first assignment of error, we find his remaining assignments of error to be rendered moot. *See* App.R. 12(A)(1)(c) (requiring this court to decide each assignment of error and give reasons in writing for its decision, "[u]nless an assignment of error is made moot by ruling on another assignment of error"); *State v. Spires*, 2023-Ohio-665, ¶ 12 (12th Dist.).

### III. CONCLUSION

{¶ 43} Appellant's presentence motion to withdraw his guilty plea was premised upon a claim of ineffective assistance of counsel for counsel's failure to advise his noncitizen client of the immigration consequences of entering a no contest plea. As such, the trial court was required to consider appellant's motion under the two-prong test for ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See State v. Romero*, 2019-Ohio-1839; *Padilla v. Kentucky,* 559 U.S. 356 (2010). The trial court's failure to do so amounted to an abuse of discretion. We therefore reverse the trial court's decision denying appellant's motion to withdraw his no contest plea and remand the matter for the trial court to engage in the proper analysis under *Strickland*.

{¶ 44} Judgment reversed and the matter remanded for further proceedings.

M. POWELL and SIEBERT, JJ., concur.

**J U D G M E N T   E N T R Y**

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and the cause is remanded for the trial court to engage in the proper analysis of appellant's motion to withdraw the no contest plea under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

It is further ordered that a mandate be sent to the Fayette County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*